UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 14-53-HRW

JEFFREY BAILEY  and SUSAN HICKS,
*individually and on behalf of others similarly situated,*                    PLAINTIFFS,

v.                    MEMORANDUM OPINION AND ORDER

STATE FARM FIRE AND CASUALTY COMPANY,                    DEFENDANT.

This matter is before the Court upon Defendant State Farm Fire and Casualty Company's

Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 35].  The motion has been

fully briefed by the parties [Docket Nos. 35-1, 36 and 37] and for the reasons set forth herein, the

Court finds that the Plaintiffs' First Amended Complaint states a claim for breach of contract

Therefore, the motion will be overruled in part and sustained in part.

## I.    FACTUAL BACKGROUND

Plaintiffs Jeffrey Bailey and Susan Hicks filed this lawsuit as a proposed class action

challenging Defendant State Farm Fire and Casualty Company's ("State Farm") calculation of

"actual cash value" ("ACV") when paying structural damage insurance claims.  Plaintiffs

contend that State Farm wrongfully depreciates the labor component of replacement cost.

The First Amended Complaint alleges distinct facts on behalf of Bailey and Hicks.

### A.    Dr. Bailey's claim.

Bailey owns a dental practice in West Liberty. Kentucky.   On March 2, 2012, his office,

located on Main Street, was severely damaged by a tornado [First Amended Complaint, Docket

No. 30, ¶ 19]. At the time of the tornado, his office was insured under a business insurance policy issued by State Farm, No. 97-27-9945-0 ('the Bailey Policy"). *Id.*, ¶ 18. The policy provides, in pertinent part:

> **e. Loss Payment**
>
> In the event of loss covered by this policy:
>
> **(1)** At our option, we will either:
>
> **(a)**  Pay the value of lost or damaged property;
> **(b)**  Pay the cost of repairing or replacing the lost or damaged property;
> **( c)**  Take all or any part of the property at an agreed or appraised value; or
> **(d)**  Repair, rebuild or replace the property with other property of like kind and quality

[Docket No. 35-2, p. 18].

If State Farm elects to pay the "value of lost or damaged property" , the Bailey Policy provides the manner in which the "value" is determined:

> **(4)** . . . [W]e will determine the value of Covered Property as follows:
>
> **(a)** At replacement cost without deduction for depreciation, as of the time of loss, subject to the following:
>
> I. We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:
>
> 1) The Limit Of Insurance under **SECTION 1 – PROPERTY** that applies to the lost or damaged property;
>
> 2) The cost to replace, on the described premises, the lost or damaged property with other property of comparable

2

material, quality and used for the same purpose; or

3) The amount that you actually spend that is necessary to
repair or replace the lost or damaged property.
...

iii. We will not pay on a replacement cost basis for any loss:

1) Until the lost or damaged property is actually
repaired or replaced;

*Id.*

In the wake of the tornado, a State Farm adjuster inspected the damage to Dr. Bailey's

office [Docket No. 30, ¶ 21]. The adjuster determined that replacement cost value ("RCV") of

Dr. Bailey's loss to be $94,842.40. *Id.* In calculating its payment obligations to Dr. Bailey, State

Farm Fire subtracted from the adjuster's replacement cost estimate the deductible provided for in

the policy plus an additional $8,644.58 for depreciation. *Id.* A copy of the correspondence

pertaining to this estimate is attached to the First Amended Complaint. [Docket 30-1.]

According to the First Amended Complaint, this estimate included the cost, materials and

labor required to complete the repairs. *Id.* at ¶ 21.     In Paragraph 23, Plaintiffs allege:

> The estimate upon which Dr. Bailey's payment was based indicates
> that **State Farm Fire depreciated both material costs and labor
> costs associated with repairs to his office**. For example, State
> Farm Fire estimated the cost of removing and replacing part of his
> office's brick veneer at $4,099.60. State Farm Fire then depreciated
> from the total replacement cost estimate to remove and replace the
> brick veneer, which constitutes labor and materials, by $520.86 to
> arrive at what it designates as an "ACV," *i.e.* actual cash value, of
> $3,578.74. Similarly, State Farm Fire estimated the total cost of
> gluing down carpet at $288.79. State Farm Fire depreciated gluing
> down carpet, which constitutes labor and materials, at $134.83 to
> arrive at an ACV of $153.96.

3

*Id.* at ¶ 23 (emphasis added).

After subtracting Dr. Bailey's deductible and $8,644.58 for depreciation, State Farm issued payment to Dr. Bailey in the amount of $86,197.82. This amount is the ACV, as calculated by State Farm. Along with payment, State Farm forwarded Dr. Bailey its "Explanation of Building Replacement Cost Benefits." [Docket No. 30, ¶ 22]. This document purports to provide an accounting of how State Farm determined the RCV and ACV for Dr. Bailey's claim. It does not, however, speak to the depreciation of labor costs. *Id.* at ¶23. The "Explanation of Building Cost Benefits" advised:

> The enclosed claim payment to you of $86,197.82 is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. Our estimate details the depreciation applied to your loss. Based on our estimate, the additional amount available to you for replacement cost benefits (recoverable depreciation) is $8,644.58. If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim representative prior to beginning repairs.

[Docket No. 33-1, p. 5].

In the First Amended Complaint, Plaintiffs do not state whether the repairs to Dr, Bailey's office have been completed, or whether he has been fully paid for the actual expenses he incurred for those repairs.

### B.  Ms. Hicks' claim.

Plaintiff Susan Hicks alleges that her residence, located at 4224 E. Highway 36, Owingsville, Kentucky, sustained structural damage due to a fire on January 4, 2014. [Docket

No. 30, ¶ 24-25].  At that time, the home was insured under a homeowners policy State Farm had

issued to Hicks and her husband, Policy No. 17-BU-3508-1 (the "Hicks Policy"). *Id.*  The Hicks

Policy provided for payment of her claim   as follows:

### COVERAGE A – DWELLING

**1. A1 – Replacement Cost Loss Settlement – Similar Construction**

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property . . . subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

[Docket No. 30-2, p. 11].

Following Ms. Hicks' loss, State Farm sent an adjuster to inspect the damage to Hicks'

home. [Docket No. 30, ¶ 27]. State Farm then prepared an estimate of the total replacement cost

for Hicks' home. *Id.*  She also was provided with an "Explanation of Building Replacement Cost

Benefits" form explaining State Farm's estimation process and the availability of additional

replacement cost benefits under her policy. [Docket No. 30, ¶ 29]. State Farm estimated Hicks'

total replacement cost as $273,306.97, applied a depreciation deduction of $60,751.32, and

calculated an ACV payment of $199,904.97 as the amount initially payable for her structural damage claim.

### C.    The policies' two-step settlement process.

Plaintiffs' policies authorized State Farm to make its initial claim payments on an ACV basis. Hicks' policy specifically states that she will only be paid the ACV of her loss unless she repairs or replaces her damaged property; thereafter, she can recover full replacement cost benefits subject to the additional terms of her policy. [Docket No. 30-2, p. 11] Likewise, Bailey's policy clearly states that Bailey will not be paid on a replacement cost basis without deduction of depreciation unless his property is repaired or replaced. [Docket No. 35-2, p. 18] Prior to such repairs, he is only entitled to the value of his damaged property with deduction for depreciation, and in accordance with the other terms of his policy. *Id.*

Plaintiffs allege that State Farm wrongfully depreciated the labor component of the RCV estimates to determine the ACV of their respective losses.

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit as a proposed class action in Morgan Circuit Court [Docket No. 1-1]. In their Complaint, they allege: breach of contract (Count I), unjust enrichment (Count II), statutory bad faith in violation of KRS 304.12-235 (Count III) and violations of KRS 367.170, the Consumer Protection Act (Count IV). In their Prayer for Relief, they ask the Court to:

> A. Certify that this lawsuit may be prosecuted as a class action pursuant to Federal Rule of Civil Procedure 23;
>
> B. Appoint Plaintiffs and Plaintiffs' counsel to represent the proposed class;

C. Declare that Defendant has breached its contractual obligations to the proposed class by depreciating labor costs;

D. Declare that Defendant has been unjustly enriched as the result of its wrongful conduct;

E. Award Plaintiffs and the proposed class damages in an amount equal to the total amount of depreciated labor costs withheld on Plaintiffs' and proposed class members' claims;

F. Award Plaintiffs and the proposed class additional damages in the amount of twelve percent (12%) per annum of the depreciated labor costs recovered pursuant to KRS 304.12-235;

G. Award Plaintiffs and the proposed class prejudgment and post-judgment interest;

H. Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

I. Award the proposed class reasonably attorney's fees and costs;

J. Trial by Jury; and

K. Any and all other relief to which Plaintiffs and the other proposed class members appear to be entitled.

[Docket No. 30, p. 17].

The case was removed to this Court upon the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Complaint was Amended to correctly name the Defendant [Docket Nos. 15 and 30]. Defendants seeks dismissal of all claims herein pursuant to Fed.R.Civ.Proc. 12(b)(6).

## III.   STANDARD OF REVIEW

In scrutinizing a complaint under Rule 12(b)(6), the Court is required to "accept all well-

pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir.2007). A complaint need not contain "detailed factual allegations". However, it must allege more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint will withstand a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint has "facial plausibility" if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.2009) (quoting Iqbal, 129 S.Ct. at 1949).

## IV.   ANALYSIS

Plaintiffs do not take issue with how State Farm determined the RCV of their respective structural damage claims, which includes both the estimated cost for repair materials and the estimated cost for repair labor. Nor do Plaintiffs disagree that it is proper for State Farm to depreciate the cost of the materials necessary to repair or replace Plaintiffs' structures to determine ACV. Rather, Plaintiffs only challenge State Farm's wrongful depreciation of the labor component of their RCV estimates to determine ACV. Plaintiffs argue that, unlike construction materials, which logically age and wear and are thus subject to depreciation, labor is not depreciable.

### A.   Plaintiffs have adequately stated a claim for breach of contract.

Plaintiffs contend that Defendant breached its contractual duty to pay Plaintiff the ACV

8

of their claims by unlawfully depreciating the cost of labor. [Docket No. 30, ¶ 57].

Actual Cash Value is not defined in either the Bailey Policy or the Hicks Policy. However, the parties agree that 806 KAR 12:095(9) governs how State Farm was to determine the ACV of Plaintiffs' claims.  This regulation, which became effective in December 1992, provides, in relevant part:

> (2) Actual cash value.
>
> (a) If the insurance policy provides for the adjustment and settlement of losses on an actual cash value basis on residential fire and extended coverage, *the insurer shall determine actual cash value as follows:  replacement cost of property at the time of the loss less depreciation, if any.* If requested by the insured, the insurer shall provide a copy of the claim file worksheets showing any and all deductions for depreciation.

806 KAR 12:095(9).

Therefore, under Kentucky law, the ACV is the "replacement cost of the property at the time of loss less depreciation."   Neither party contests that materials are subject to depreciation and that issue is not before the Court.  The very narrow question presented is whether the installation of materials, i.e. the labor, is subject to depreciation?

This issue is one of first impression in Kentucky. Although the parties endeavor, quite strenuously, to force various square pegs into round holes, it is clear that there is no Kentucky law, statutory or case, which squarely addresses this issue.  This is not the end of this Court's analysis, however.  Kentucky courts have spoken, repeatedly, about insurance, in general, and the contours of the insurer - insured relationship.

Kentucky has long since recognized that the purpose of insurance is to indemnify the insured; in other words, to put the insured back in the position he or she enjoyed before the loss.

9

*See generally, Great American Insurance Company v. Crume*, 99 S.W.2d 742 (Ky. 1936).

Indeed, under Kentucky law, after suffering damage to property, an insured "should be neither

enriched nor impoverished. The insurance company should restore to him what he had before the

[loss], nothing less and nothing more." *Id.* at 744.   Yet, **perfect** indemnity is only attainable in

theory.  One cannot go back in time. As a practical matter, indemnity can only be achieved is

through replacement.   In *Crume*, the Court of Appeals of Kentucky explained that in the context

of property insurance, where a portion of a building "was so injured as to require labor or

material to make it as good as it was, [the insured] should recover the reasonable cost of that as

well as the reasonable cost of labor or material, if any, made necessary to restore the [damaged

portions] to as good condition as they were." *Id.*      In other words, the insured receives the cash

equivalent of the damaged property as it existed immediately prior to the loss.  Restoring the

insured to his or her pre-loss position is the benefit of the bargain of the insurance contract, is it

not?     In interpreting the actual insurance policy, which is the contract between the insured and

the insurer, Kentucky law is clear: "A contract of insurance will be construed strictly against the

insurer and liberally in favor of the insured." *Aetna Insurance Company v, Jackson*, 16 B.Mon.

242 (Ky. App. 1855). "[S]ince the policy is drafted in all details by the insurance

company, it must be held strictly accountable for the language used." *Eyler v. Nationwide

Mutual Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992).  *See also, Wolford v. Wolford*, 662

S.W.2d 835 (Ky. 1984).

  Taking into consideration these fundamental tenets of Kentucky law, it would appear that

the depreciation of labor in calculating ACV is improper.   The contract between Plaintiffs and

Defendant required Plaintiffs to pay premiums in exchange for indemnification in the event of a

loss. The contract, as further refined by 806 KAR 12:095(9), sets forth the manner in which the amount of indemnity is to be calculated, replacement cost minus depreciation. The damaged or destroyed materials are given the value they had immediately prior to the loss. Therefore, if the affected property was a ten year old garage, the insured would not be given the cash equivalent of a brand new garage but one that had stood for ten years. The calculation would take into account wear and tear of the materials.

However, labor is not subject to wear and tear. Indeed, the cost of labor to install a new garage would be same as installing a garage with 10 year old materials. In other words, depreciated labor costs would result in **under**indemnification. As the insurance contract is one for indemnity, depreciating the cost of labor violates the contract.

Moreover, to the extent that the contract is unclear with regard to whether labor is subject to depreciation, Kentucky law dictates that the ambiguity be resolved in favor of the insured.

Defendant vehemently opposes this interpretation. It argues that at the time of the their respective losses, Plaintiffs had aging properties comprised of aging materials that were installed at labor costs in effect at the time of construction. It contends that once these properties sustained damages, State Farm's only obligation was to pay amounts necessary to put them in their pre-loss conditions. It maintains that if it were to pay the undepreciated, or prevailing, cost of labor, Plaintiffs would be in an improved position, i.e. a windfall.

This argument ignores the nature of the contract and the relationship between an insurer and its insured. "It can hardly be said that an insured reaps a windfall by obtaining payment of actual cash value determined in a fair and reasonable manner when that is precisely what the insurer has agreed to pay under its policy in advance." *Whitehouse Condominium Group, LLC*

11

*v. The Cincinnati Insurance Company*, 569 Fed. Appx. 413, 420 (6th Cir. 2014).

Other courts have grappled with this issue and the results are divided. In *Adams v. Cameron Mutual Insurance*, 430 S.W.3d 675 (Ark. 2013), labor was determined not to be subject to depreciation. That case arose from a tornado which damaged Plaintiffs Mark and Kathy Adams' home. At the time of the tornado, their home was insured by Defendant Cameron Mutual Insurance Company ("Cameron"). Cameron's adjuster valued the Adams' loss at $48, 647.04, minus $8, 364.66 for depreciation. *Id.* at 676. The items depreciated included certain labor-only items, such as the removal of roof decking, siding and flooring. *Id.* In their complaint before the United States District Court for the Western District of Arkansas, the Adams' asserted that Cameron's deprecation of the labor-only costs resulted in payment which was less than what they were entitled to under the contract for insurance. *Id.* at 677. The District Court certified the question to the Supreme Court of Arkansas:

> Whether an insurer in determining the "actual cash value" of a covered loss under an indemnity insurance policy may depreciate the costs of labor when the term "actual cash value" is not defined in the policy.

*Id.* at 676.

The Supreme Court of Arkansas concluded the answer to the question was no, it may not. In doing the so, the Arkansas Court stated that labor is not, logically, depreciable. It reasoned that " 'depreciation' plainly means '[a] decline in an asset's value because of use, wear, obsolescence or age' " and that these factors do not apply to labor. *Id.* at 678 (internal citation omitted). The Court found no merit in Cameron's argument that paying the full labor costs associated with the Adams' losses would but the insureds in a better position than they were prior

12

to the loss. *Id.* at 677.   Moreover, it found that the policy at issue was ambiguous in this regard and, as such, would be construed in favor of the insured. *Id.* at 679.

By contrast, the Supreme Court of Oklahoma, was certified a similar question and reached an opposite conclusion. In *Redcorn v. State Farm Fire & Casualty Company*, 55 P.3d 1017 (Okla. 2002), the Oklahoma court held that labor costs could be depreciated in determining the actual cash vale. *Id.* at 1018.   At issue in *Redcorn*, was the damage to Charles Redcorn's roof by either a windstorm or hail. *Id.*   The damage was covered by a policy of insurance issued by State Farm which provided for roof surface repair and replacement coverage on the basis of actual cash value. In assessing the damage, State Farm concluded that the total amount of Redcorn's loss was $11,050. *Id.*  at 1022.   As the roof was sixteen years old, State Farm applied a depreciation factor of 80%, based upon a twenty-year roof life. *Id.*   Subtracting 80% of the total amount of the loss resulted in an actual cash value of $2, 210.   Redcorn filed a lawsuit against State Farm, arguing that while State Farm may properly depreciate the cost of material to be installed on his roof, it may not depreciate the cost of labor to install them.  *Id.*   The question of whether labor is subject to depreciation was certified to the Supreme Court of Oklahoma.  The Court reasoned that a roof was a "single product, consisting of both materials and labor" and that depreciation of the whole product includes deprecation of labor costs.  *Id.*

This Court finds the reasoning of the dissenters in *Redcorn* more persuasive.  In rejecting the majority's characterization of a roof as a single product, Justice Daniel Boudreau observed:

> A roof, unlike a preassembled consumer good, is not an integrated
> product. Redcorn cannot go the lumber yard or the retail store and
> buy a roof. A roof does not exist until the shingles are transported
> to the site and installed on top of the house. A roof is not a unified
> product but a combination of a product (shingles) and a service

13

(labor to install the shingles).

*Id.* at 1022 (Boudreau, J. dissenting).  Denying the distinct nature of labor as a component runs

afoul logic.

Even more compelling are his thoughts with regard to the depreciation of labor. Justice

Boudreau noted that while shingles lose value due to wear and tear and are, thus, depreciable,

"[l]abor, on the other hand, is not logically depreciable." *Id.*   He asks: "Does labor lose value

due to wear and tear? Does labor lose value over time? What is the typical depreciable life of

labor? Is there a statistical table that delineates how labor loses value over time?" *Id.*   "I think

the logical answers are no, no, it is not depreciable, and no." *Id.*   Justice Boudreau then offered

an illustration of just how absurd the idea of depreciated labor is: "The image that comes to me is

that of a very old roofer with debilitating arthritis who can barely climb a ladder or hammer a

nail. The value of his labor, I suppose, has depreciated over time." *Id.*

This Court heartily agrees with Justice Boudreau. The very idea of depreciating the value

of labor defies good common society.   To adequately indemnify its insureds, State Farm should

pay the cost of materials, depreciated for wear and tear, plus the cost of their installation.

Although the undersigned cannot divine with certainty what a Kentucky court would find, this

conclusion is consistent with Kentucky law, as discussed *supra* and general principles of

indemnity.

**B.      Plaintiffs have not stated a viable claim for unjust enrichment.**

Unjust enrichment is a cause of action "based upon an implied contract, creating an

obligation from the recipient of the benefits received to the one bestowing them, to compensate

him for whatever outlay he has made in bestowing them." *Durbin v. Bank of Bluegrass & Trust*

14

*Co.*, 2006 WL 1510479, at *3 (Ky.App. Jun. 2, 2006) (unpublished)). To state a claim for unjust enrichment, the complaint must allege that the plaintiff conferred a benefit upon the defendant. *Id. See also*, *Collins v. Kentucky Lottery Corp.*, 399 S.W.3d 449 (Ky. App. 2012).

In this case, Plaintiffs have not alleged a factual basis for unjust enrichment.  There are no allegations in the First Amended Complaint that they conferred a benefit on State Farm that State Farm wrongfully retained.  Rather, Plaintiffs' allege "Defendant retained, and had the beneficial use of, money that Plaintiffs and other proposed class members were entitled to and should have received in payment of their claims." [Docket No. 30, ¶ 68].  This allegation follows exactly the opposite formulation of unjust enrichment. Plaintiffs claim that  State Farm kept amounts it should have paid out, not that it kept funds Plaintiffs affirmatively had transferred to State Farm. This back-to-front argument does not state a claim for unjust enrichment under Kentucky law.

### C.    Plaintiffs cannot maintain their statutory claims.

In Counts II and IV of the First Amended Complaint, Plaintiffs allege that State Farm engaged in actionable bad faith pursuant to KRS § 304.12-235 and the Kentucky Consumer Protection Act, KRS § 367.170.

In order to pass Rule 12(b)(6) muster, Plaintiffs must adequately allege that: (1) State Farm was obligated to pay the claim under the terms of the policy; (2) State Farm lacked a reasonable basis in law or fact for denying the claim; and (3) State Farm either knew there was no reasonable basis for denying the claim or acted with reckless disregard as to the existence of such a basis. *Rawe v. Liberty Mutual Fire Insurance Company*, 462 F.3d 521, 527 (6th Cir. 2007).

First, a breach of contract is not, standing alone, tantamount to bad faith.  *See generally,* *Wittmer v. Jones*, 864 S.W.2d 885, 880 (Ky. 1993).   While,  depreciating small change here and

15

there defies logic and seems absurd, without evidence of evil motive or reckless indifference, there is no "bad faith."  Which begs the question of whether dismissing the statutory claims, before discovery, is premature.  Not in this case. Given that there is no Kentucky law which specifically addresses the deprecation of labor issue, it cannot be said that State Farm acted "unreasonably".  The Kentucky Court of Appeals explains that **bad faith** cannot be found where "a genuine dispute exists to the status of the law governing the coverage question and the insured's claim is fairly debatable." *Empire Fire & Marine Insurance Company v. Simpsonville Wrecker Service, Inc.*, 880 S.W.2d 886, 890 (Ky. App. 1994).

As such, Counts III and IV are subject to dismissal.

## V.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant State Farm Fire and Casualty Company's Motion to Dismiss Plaintiffs' First Amended Complaint [Docket No. 35] be **OVERRULED** as it pertains to Count I of Plaintiffs' First Amended Complaint and **SUSTAINED** as it pertains to Counts II, III and IV of Plaintiffs' First Amended Complaint.

This 25th day of March, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge