UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT ASHLAND
CIVIL ACTION NO. 14-CV-00053-HRW
*ELECTRONICALLY FILED*

JEFFREY BAILEY, SUSAN HICKS, and DON WILLIAMS,
individually and on behalf of
all others similarly situated                                              PLAINTIFFS

v.   **SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

STATE FARM FIRE AND CASUALTY COMPANY                          DEFENDANT

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

### Introduction

Come Plaintiffs Dr. Jeffrey Bailey, Susan Hicks, and Don Williams individually and on behalf of all others similarly situated, and for their Second Amended Class Action Complaint against Defendant State Farm Fire and Casualty Company ("State Farm Fire" or "Defendant") and state and allege the following:

1.   On March 2, 2012, a powerful tornado swept through West Liberty. It was classified as EF3 on the Enhanced Fujita scale, which rates the strength of tornados.

2.   In less than a minute, the tornado's violent winds had destroyed and severely damaged homes, businesses, churches, and many other structures in and around West Liberty.

3.   Like many Morgan County residents, Dr. Bailey's property was severely damaged by the tornado. Jeff Bailey is a dentist and his dental office was destroyed by the tornado.

4.   At the time of the tornado, Dr. Bailey's property was covered by a policy of insurance issued by State Farm Fire.

5. While State Farm Fire did compensate Dr. Bailey for certain damage to his property, as alleged in detail below, under its actual cash value ("ACV") calculation, State Farm Fire systematically and improperly depreciated the cost of the labor required to repair the damage to Dr. Bailey's property. As a result, State Farm Fire underpaid Dr. Bailey's claim.

6. On January 4, 2014, Susan and Scottie Hicks' home in Owingsville caught fire and was destroyed. Tragically, Scottie Hicks was killed in the fire.

7. At the time of the fire, the Hicks' home was covered by a policy of insurance issued by State Farm Fire.

8. While State Farm Fire did compensate Mrs. Hicks for certain damage to her home, as alleged in detail below, under ACV calculation, State Farm Fire systematically and improperly depreciated the cost of the labor required to repair the damage to Mrs. Hicks' home. As a result, State Farm Fire underpaid Mrs. Hicks' claim.

9. On May 23, 2014, Don Williams' home in Monticello, Kentucky caught fire and was destroyed.

10. At the time of the fire, the Mr. Williams' home was covered by a policy of insurance issued by State Farm Fire.

11. While State Farm Fire did compensate Mr. Williams for certain damage to his home, as alleged in detail below, under ACV calculation, State Farm Fire systematically and improperly depreciated the cost of the labor required to repair the damage to Mr. Williams' home. As a result, State Farm Fire underpaid Mr. Williams' claim.

12. By underpaying Plaintiffs' claim, State Farm Fire denied Plaintiffs access to funds necessary to pick up the pieces during a period of great need and tremendous stress. This is directly contrary to the purpose of insurance – to protect insureds when they are in such need.

13. State Farm Fire's systematic underpayment of claims is not limited to Plaintiffs' claims. On information and belief, State Farm Fire consistently depreciates the cost of labor from its ACV calculations for property damage claims made throughout Kentucky and has been doing so at all times relevant to the allegations of this Complaint. This includes payments to victims of natural disasters such as tornados and other wind storms, victims of fire, and those who have suffered from any other form of covered property loss.

14. Kentucky law allows an insurer to depreciate the value of building materials, but does not allow the depreciation of the cost of labor. As a result, and as detailed below, by depreciating labor costs from its ACV calculations around Kentucky, State Farm Fire has engaged, and continues to engage, in a systematic and unlawful pattern of underpayment of insurance claims.

**Parties**

15. Plaintiff Dr. Jeffrey Bailey is a resident of Morgan County, Kentucky. He maintains a dental office in downtown West Liberty.

16. Plaintiff Susan Hicks is a resident of Bath County, Kentucky.

17. Plaintiff Don Williams is a resident of Wayne County, Kentucky.

18. Defendant State Farm Fire and Casualty Company is an insurance company authorized to do business in Kentucky by holding a Kentucky Certificate of Authority. State Farm Fire and Casualty Company's statutory home office at One State Farm Plaza, Bloomington, Illinois, 61710. State Farm Fire's service of process agent is Jeff Shay, who is located at 2500 Memorial Boulevard, Murfreesboro, Tennessee 37131-0001.

## Jurisdiction and Venue

19. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant's, and the matter in controversy exceeds $5,000,000, exclusive or interest and costs.

20. This Court has personal jurisdiction over Defendant as Defendant has sufficient minimum contacts with the Commonwealth of Kentucky, is authorized to do business in Kentucky and has availed itself of the privilege of conducting business in the Commonwealth of Kentucky.

21. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in Morgan County and Bath County, both of which are situated within Eastern District of Kentucky, Ashland Division. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District.

## Factual Background

22. Dr. Bailey contracted with State Farm Fire for an insurance policy providing coverage for certain losses to his dental office located on Main Street, West Liberty, Kentucky 41472. At all times relevant to this action Dr. Bailey's property was insured under State Farm Fire Policy No. 97-27-9945-0.

23. On or about March 2, 2012, at a time when the above-described insurance policy was in full force and effect, Dr. Bailey suffered covered losses to his property as a result of the tornado that struck West Liberty. Dr. Bailey timely submitted claims to State Farm Fire requesting payment for his covered losses.

24. State Farm Fire subsequently confirmed that Dr. Bailey had sustained covered losses to his property, and that State Farm Fire was contractually obligated to pay Dr. Bailey's claims for his covered losses pursuant to the terms of his insurance policies.

25. Soon after the March 2, 2012, tornado loss, State Farm Fire sent an adjuster to inspect the damage to Dr. Bailey's office. As set forth in a written estimate and correspondence to Plaintiff, State Farm Fire's adjusters determined that Dr. Bailey had suffered a covered loss in the amount of $94,842.40 to his dental office. The estimate included the cost of materials and labor required to complete the repairs. A copy of the estimate and correspondence sent to Dr. Bailey is attached as Exhibit A.

26. In calculating its payment obligations to Dr. Bailey, State Farm Fire subtracted from the adjuster's replacement cost estimate the deductible provided for in the policy plus an additional $8,644.58 for depreciation.

27. The estimate upon which Dr. Bailey's payment was based indicates that State Farm Fire depreciated both material costs and labor costs associated with repairs to his office. For example, State Farm Fire estimated the cost of removing and replacing part of his office's brick veneer at $4,099.60. State Farm Fire then depreciated from the total replacement cost estimate to remove and replace the brick veneer, which constitutes labor and materials, by $520.86 to arrive at what it designates as an "ACV," i.e. actual cash value, of $3,578.74. Similarly, State Farm Fire estimated the total cost of gluing down carpet at $288.79. State Farm Fire depreciated gluing down carpet, which constitutes labor and materials, at $134.83 to arrive at an ACV of $153.96.

28. Mrs. Hicks contracted with State Farm Fire for an insurance policy providing coverage for certain losses to the home she shared with her husband located at 4224 E. Highway

36, Owingsville, Kentucky. At all times relevant to this action Mrs. Hicks' property was insured under State Farm Fire Policy No. 17-BU-3508-1.

29. On or about January 4, 2014, at a time when the above-described insurance policy was in full force and effect, Mrs. Hicks suffered a covered fire loss to her property. Mrs. Hicks timely submitted claims to State Farm Fire requesting payment for her covered losses.

30. State Farm Fire subsequently confirmed that Mrs. Hicks had sustained covered losses to her property, and that State Farm Fire was contractually obligated to pay her claims for the covered losses pursuant to the terms of her insurance policies.

31. Soon after the January 4, 2014 fire, State Farm Fire sent an adjuster to inspect the damage to Mrs. Hicks' home. As set forth in a written estimate and correspondence to Mrs. Hicks, State Farm Fire's adjusters determined that Mrs. Hicks had suffered a covered loss in the amount of $273,306.97 to her home. The estimate included the cost of materials and labor required to complete the repairs. A copy of the estimate and correspondence sent to Mrs. Hicks is attached as Exhibit B.

32. In calculating its payment obligations to Mrs. Hicks, State Farm Fire subtracted from the adjuster's replacement cost estimate the deductible provided for in the policy, $60,751.32 for depreciation, and $12,150.68 for general contractor overhead & profit on recoverable and non-recoverable depreciation.

33. The estimate upon which Mrs. Hicks' payment was based indicates that State Farm Fire depreciated both material costs and labor costs associated with repairs to her home. For example, State Farm Fire estimated the cost of "[l]abor to frame 2" x 4" non-bearing wall – 16" oc" at $1,405.74. State Farm Fire then depreciated from the total replacement cost estimate for this labor by $337.37 to arrive at what it designates as an "ACV," i.e. actual cash value, of

6

$1,068.37. Similarly, State Farm Fire estimated the total cost to "[s]eal/prime then paint [certain] walls (2 coats)" at $79.62. State Farm Fire depreciated this amount, which constitutes labor and materials, by $25.49 to arrive at an ACV of $54.13.

34. Mr. Williams contracted with State Farm Fire for an insurance policy providing coverage for certain losses to his home located at 907 Lakeview Drive, Monticello, Kentucky. At all times relevant to this action Mr. Williams' property was insured under State Farm Fire Policy No. 17-CG9485-4

35. On or about May 23, 2014, at a time when the above-described insurance policy was in full force and effect, Mr. Williams suffered a covered fire loss to his home. Mr. Williams timely submitted claims to State Farm Fire requesting payment for his covered losses.

36. State Farm Fire subsequently confirmed that Mr. Williams had sustained covered losses to his property, and that State Farm Fire was contractually obligated to pay his claims for the covered losses pursuant to the terms of his insurance policies.

37. Soon after the May 23, 2014 fire, State Farm Fire sent an adjuster to inspect the damage to Mr. Williams' home. As set forth in a written estimate and correspondence to Mr. Williams, State Farm Fire's adjusters determined that Mr. Williams had suffered a covered loss in the amount of $206,068.88 to his home. The estimate included the cost of materials and labor required to complete the repairs. A copy of the estimate and correspondence sent to Mr. Williams is attached as Exhibit C. Soon thereafter, State Farm Fire made a small additional actual cash value payment to Mr. Williams, from which is also improperly depreciated labor costs.

38. In calculating its payment obligations to Mr. Williams, State Farm Fire subtracted from the adjuster's replacement cost estimate the deductible provided for in the policy, $40,627.34

7

for depreciation, and $8,125.54 for general contractor overhead & profit on recoverable and non-recoverable depreciation.

39. The estimate upon which Mr. Williams' payment was based indicates that State Farm Fire depreciated both material costs and labor costs associated with repairs to his home. For example, State Farm Fire estimated the cost of "[l]abor to frame 2" x 4" non-bearing wall – 16" oc" at $675.05. State Farm Fire then depreciated from the total replacement cost estimate for this labor $108.72 to arrive at what it designates as an "ACV," i.e. actual cash value, of $1,056.04.

### Policy Terms and Claims Settlement Practices

40. The policy of insurance State Farm Fire issued to Dr. Bailey, Mrs. Hicks, Mr. Williams, and other members of the proposed class provide replacement cost value ("RCV") coverage for both total loss of and partial loss to covered dwellings and other structures.

41. At all times relevant to this cause of action, State Farm Fire's custom and practice has been to pay its RCV policy holders the actual cash value ("ACV") of covered loss claims, net of any applicable deductible. In order to qualify for additional payment and recover the full RCV of the covered loss, the insured party must repair, rebuild or replace the damaged property within a specific time frame and submit proof to Defendant that the repair of replacement was timely completed. Costs that exceed the amount of the ACV payment are the responsibility of the policy holder.

42. At all times relevant hereto, State Farm Fire's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property then deduct depreciation.

43. Kentucky law permits an insurer to "determine actual cash value as follows: replacement cost of property at the time of the loss less depreciation, if any." 806 KAR 12:095. However, an insurer may not depreciate labor costs associated with such repair or replacement.

44. In the context of insurance law, "depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." BLACK'S LAW DICTIONARY 506 (9th ed. 2009). Materials used in the repair or replacement of damaged property e.g. roofing shingles or metal, diminished in value over time due to use, wear, obsolescence, and age. As such, these are assets that can be depreciated. In contrast, labor is not susceptible to aging or wear. Its value does not diminish over time. Conceptually, and practically, depreciation simply cannot be applied to labor costs.

45. The universally accepted premise is that the basic purpose of property insurance is to provide indemnity to policy-holders. To indemnify means to put the insured back in the position he or she enjoyed before the loss – no better and no worse. A policy that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of the ACV payment is to make the insured whole but not to benefit him or her because a loss occurred. See APPLEMAN ON INSURANCE 2D § 3823. An RCV policy expands the basic concept of indemnity to include coverage for repairs and replacement costs that exceed the ACV of the loss.

46. In order to recover the RCV of their covered losses, Plaintiffs and other proposed class members are required to pay the out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from State Farm Fire. While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs. State Farm Fire's failure to pay the full cost of the labor necessary to repair or replace Plaintiffs'

damaged property in the ACV payments left Plaintiffs under-indemnified and underpaid for their losses.

47. State Farm Fire materially breached its duty to indemnify Plaintiffs by depreciating labor costs associated with repairs to Plaintiffs' property in the ACV payment, thereby paying Plaintiffs less than what they were entitled to receive under the terms of their insurance contracts.

## Class Action Allegations

48. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated. This action satisfies the FRCP 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and the FRCP 23(b) requirements of predominance and superiority.

49. The proposed class which Plaintiffs seek to represent is defined as follows:

> All persons and entities that received "actual cash value" payments, directly or indirectly, from State Farm Fire for loss or damage to a dwelling, business, or other structure located in the State of Kentucky, such payments arising from events that occurred from February 28, 2004 through the date of trial, where the cost of labor was depreciated. Excluded from the Class are: (1) all persons and entities that received payment from State Farm Fire in the full amount of insurance shown on the declarations page; (2) State Farm Fire and its affiliates, officers, and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiffs' counsel.

50. The members of the proposed class are so numerous that joinder of all members is impractical. Plaintiffs reasonably believe that hundreds if not thousands of people geographically dispersed across Kentucky have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are identifiable through records maintained by Defendant, and proposed class members may be notified of the pendency of this action by mailed, published and/or electronic notice.

51. Common questions of law and fact exist as to all proposed class members and predominate over any questions affecting only individual proposed class members. The questions of law and fact common to the proposed class include, but are not limited to:

- A. Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

- B. Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

- C. Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiffs and other proposed class members.

- D. Whether Plaintiffs and other proposed class members have been damaged by Defendant's breaches, as alleged herein, and if so:

    1. What is the nature and extent of those damages; and

    2. What relief should be awarded to Plaintiffs and other proposed class members;

- E. Whether Defendant has been unjustly enriched by retaining money that should have been paid to Plaintiffs and other proposed class members;

- F. Whether Defendant violated KRS 304.12-235 by depreciating labor costs in calculating ACV payments; and

- G. Whether Defendant violated KRS 367.170 by depreciating labor costs in calculating ACV payments.

52. Plaintiffs' claims are typical of the claims of all the proposed class members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct and their claims are based on such conduct. Further, Plaintiffs' claims are typical of the claims of all proposed class members because their claims arise from the same or similar underlying facts and are based on the same factual and legal theories. Plaintiffs are no different in any material

respect from any other member of the proposed class – all members of the proposed class had labor unlawfully depreciated.

53. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the class they seeks to represent. Plaintiffs have retained counsel who are competent and experienced in class action litigation and complex insurance-related cases and will fairly and adequately represent the interests of the proposed class. Plaintiffs and their counsel will prosecute this action vigorously.

54. A class action is superior to all available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable, and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most class members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover individual litigation could result in inconsistent adjudications of common issues of law and fact.

55. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and proposed class members. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

56.     Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed class as a whole.

### **Fraudulent Concealment**

57.     At all times relevant to the allegations set forth herein, Defendant owed a fiduciary duty to, and/or had a special relationship with, Plaintiffs and other proposed class members.

58.     Throughout the claims process, Plaintiffs and other proposed class members asked Defendant to pay them what they were entitled to receive as the ACV of their covered losses under the terms of their insurance policies.  Defendant affirmatively responded to Plaintiffs and other proposed class members that their ACV payments were the full amount owed under policies and that no additional money was owed under the ACV calculation.

59.     Plaintiffs and other proposed class members justifiably and reasonably relied upon Defendant's representations that they had received all they were entitled to recover as ACV payments from Defendant under the terms of their policies.

60.     Defendant had a duty to disclose to Plaintiffs and other proposed class members that they were entitled to recover the full cost of labor necessary to repair or replace their property in their ACV payments.  Defendant not only failed to disclose this information, but it also acted in a manner designed to conceal from the Plaintiffs and other proposed class members that it was depreciating the cost of labor.  Because of Defendant's actions, Plaintiffs and other proposed class members could not have known they had been underpaid on their claims through the exercise of due diligence.

61.     Defendant's fraudulent concealment tolls the running of any statute of limitations that may otherwise be applicable to the claims for relief asserted herein.

## Count I – Breach of Contract

62. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

63. Defendant entered into policies of insurance with Plaintiffs and other members of the proposed class. These policies govern the relationship between Defendant and Plaintiffs and other proposed class members, as well as the manner in which claims for covered losses are handled.

64. The insurance policies at issue were drafted by Defendant and are essentially identical in all respects material to this litigation.

65. Plaintiffs and other proposed class members complied with all material provisions and fulfilled their respective duties with regard to their policies.

66. The policies of insurance Defendant issued to Plaintiffs and other proposed class members state that in the event of a loss Defendant may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV for the loss, net of any applicable deductible.

67. Defendant breached its contractual duty to pay Plaintiffs and other proposed class members the ACV of their claims by unlawfully depreciating labor costs.

68. Defendant's actions in breaching its contractual obligations to Plaintiffs and other proposed class members benefitted, and continue to benefit, Defendant. Likewise, Defendant's actions damaged, and continue to damage, Plaintiffs and other proposed class members.

69. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and other proposed class members.

70. Accordingly, Plaintiffs and other proposed class members are entitled to recover damages sufficient to make them whole for the amounts Defendant unlawfully withheld from its ACV payments as labor cost depreciation.

## **Prayer for Relief**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request that the Court grant the following relief:

A. Certify that this lawsuit may be prosecuted as a class action pursuant to Federal Rule of Civil Procedure 23;

B. Appoint Plaintiffs and Plaintiffs' counsel to represent the proposed class;

C. Declare that Defendant has breached its contractual obligations to the proposed class by depreciating labor costs;

D. Award Plaintiffs and the proposed class damages in an amount equal to the total amount of depreciated labor costs withheld on Plaintiffs' and proposed class members' claims;

E. Award Plaintiffs and the proposed class prejudgment and post-judgment interest;

F. Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

G. Award the proposed class reasonably attorney's fees and costs;

H. Trial by Jury; and

I. Any and all other relief to which Plaintiffs and the other proposed class members appear to be entitled.

Respectfully submitted,

*/s/ Erik D. Peterson*
M. AUSTIN MEHR
PHILIP G. FAIRBANKS
ERIK D. PETERSON
BARTLEY K. HAGERMAN
**Mehr Fairbanks Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, KY 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email:  amehr@austinmehr.com
Email:  pgf@austinmehr.com
Email: edp@austinmehr.com
Email: bkg@austinmehr.com

and

J. MORGAN SMITH
**Richardson & Smith, PSC**
62 West Main Street – Post Office Box 1040
Owingsville, Kentucky 40360
Telephone:  606-674-8111
Facsimile:  606-674-6893

and

PAULA RICHARDSON
**Richardson, Barber & Williamson, PSC**
86 West Main Street
P.O. Box 1169
Owingsville, KY 40360
Telephone:  606-674-6337
Facsimile:  606-674-6090

*Counsel for Plaintiffs and
the Proposed Class*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 21, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following registered participants:

- **Joseph A. Cancila , Jr**
  jcancila@schiffhardin.com,lkelly@schiffhardin.com
- **Tal C. Chaiken**
  tchaiken@schiffhardin.com,edocket@schiffhardin.com
- **Heidi Dalenberg**
  hdalenberg@schiffhardin.com,zhill@schiffhardin.com
- **Philip G. Fairbanks**
  pgf@austinmehr.com,fan@austinmehr.com,amlopsc@yahoo.com,fanl@austinmehr.com
- **Bartley K. Hagerman**
  bkh@austinmehr.com,amlopsc@yahoo.com,fanl@austinmehr.com
- **Harnaik (Nick) Singh Kahlon**
  nkahlon@schiffhardin.com,sstojanovic@schiffhardin.com
- **David T. Klapheke**
  dklapheke@bsg-law.com,ctyrrell@bsg-law.com
- **M. Austin Mehr**
  amehr@austinmehr.com,amlopsc@yahoo.com,pgf@iglou.com,layfield@iglou.com
- **Erik David Peterson**
  edp@austinmehr.com,fan@austinmehr.com,amlopsc@yahoo.com
- **Jessica Morgan Smith**
  j.morgan.smith11@gmail.com

      /s/ Erik D. Peterson _____
      ERIK D. PETERSON