**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION**

| | |
|---|---|
| SUSAN HICKS and DON WILLIAMS, individually and on behalf of all others similarly situated, | No. 14-cv-00053-HRW |
| Plaintiffs, | |
| v. | Hon. Henry R. Wilhoit |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

**STATE FARM'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

I.     PLAINTIFFS' ASSERTED CLASS. ...................................................................... 2

II.    THE LOSS SETTLEMENT PROVISION OF PLAINTIFFS' POLICY. ......................... 3

III.   PLAINTIFFS' INDIVIDUAL CLAIMS ................................................................. 4

     A.    The Hicks Loss ......................................................................................... 4

     B.    The Williams Loss .................................................................................... 6

     C.    The Bailey Loss. ....................................................................................... 6

IV.   THE STATE FARM ESTIMATING PROCESS, APPLICATION OF
       DEPRECIATION, AND LIMITATIONS ON DATA REPORTS. ................................ 7

     A.    Variations in the Application of Depreciation in Xactimate Estimates. ............... 7

     B.    ACV Payments Cannot Systematically Be Identified by Electronic Queries
           Against Estimate Data Because Estimates Are Not Evidence of Payments. ......... 8

     C.    Accurate Reports of ACV Payments and Applied Labor Depreciation
           Cannot be Generated Through Electronic Queries Against State Farm's
           Claim Data. .......................................................................................... 10

     D.    State Farm's Records Do Not Contain "Labor Depreciation" Values, And
           Calculating Such Amounts Requires Extensive Individualized Analysis. .......... 10

     E.    The Merits of the Asserted Class Claims Cannot Be Resolved Without
           Insureds' Records. ................................................................................. 12

V.    PLAINTIFFS MISINTERPRET AND OVERSTATE THE DATA THEY RELY
       UPON FOR CLASS CERTIFICATION. ............................................................. 13

     A.    The Removal Data. ................................................................................. 13

     B.    The Report. ........................................................................................... 14

     C.    The Kentucky Supplemental Payments. ..................................................... 15

VI.   STATE FARM'S EXPERT EVIDENCE DEMONSTRATES THE NEED FOR
       INDIVIDUALIZED PROOFS. ........................................................................ 17

     A.    O'Connor's Opinions Regarding The Need for Individualized Evidence to
           Identify Class Members and Calculate Their Damages. ................................. 17

     B.    Berryman's Opinions Regarding Repair Estimating and Reconstruction. .......... 19

     C.    Dr. Prowse's Opinions Regarding the Need for Individualized Inquiry to
           Identify Who May Have Sustained injury. ................................................. 19

i

## TABLE OF CONTENTS
(continued)

Page

VII.   PLAINTIFFS' EXPERT'S OPINION IS UNPERSUASIVE AND
       UNRELIABLE. ................................................................................................. 21

       A.   Applying the Methodology Based on Data from the Report Results in
            Errors................................................................................................... 22

       B.   The Error Rate for Solomon's Methodology is Unknown.................................. 24

       C.   Solomon's Methodology Does Not Match Plaintiffs' Liability Theory and
            Ignores Their Policy Language. ................................................................. 25

ARGUMENT ................................................................................................................ 25

I.     PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE IT
       INCLUDES MANY MEMBERS WHO LACK STANDING. ...................................... 26

       A.   Insureds Who Have Been Paid Their Actual, Incurred Cost to Repair Are
            Not Injured............................................................................................. 27

       B.   Standing Cannot Be Grounded Solely Upon Claimed Prejudgment
            Interest................................................................................................... 30

II.    THE PROPOSED CLASS IS OVERBROAD BECAUSE IT INCLUDES
       INDIVIDUALS WHOSE CLAIMS ARE TIME-BARRED. .......................................... 32

III.   ASCERTAINABILITY FAILS DUE TO THE NEED FOR INDIVIDUALIZED
       PROOFS TO DETERMINE WHO QUALIFIES FOR CLASS MEMBERSHIP.......... 32

IV.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE PREDOMINANCE OR
       SUPERIORITY............................................................................................................ 34

       A.   The Need for Individualized Determinations on the Merits for Each
            Putative Class Member Precludes a Finding of Predominance. ......................... 34

       B.   Superiority Fails Given the Need for Extensive Individualized Fact-
            Finding for Every Putative Class Member's Claim............................................ 36

V.     COMMONALITY, TYPICALITY, AND ADEQUACY ARE NOT SATISFIED. ....... 37

       A.   Commonality Is Not Satisfied.................................................................... 37

            1.   An Issue That Has Been Decided Cannot Support Commonality. .......... 37

            2.   If the Issue of Labor Depreciation is Reexamined, the Question
                 Should Be Resolved in State Farm's Favor. ........................................... 38

       B.   Typicality Is Not Satisfied. ....................................................................... 39

       C.   Plaintiffs' Lack of Standing Renders Them Inadequate as Class
            Representatives. ...................................................................................... 40

CONCLUSION............................................................................................................. 40

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. United Servs. Auto. Assoc.*,
    2016 WL 1465433 (W.D. Ark. Apr. 14, 2016) ................................................................ 35, 38

*Allstate Ins. Co. v. Glob. Med. Billing, Inc.*,
    520 Fed. Appx. 409 (6th Cir. 2013) .......................................................... 27

*Amanda Labrier v. State Farm Fire & Cas. Co.*,
    Nos. 16-3185 & 16-3562 (8th Cir.) ........................................................ 34, 35

*Anderson v. United Fin. Sys. Corp.*,
    281 F.R.D. 292 (N.D. Ohio 2012) .......................................................... 27

*Brown v. Paducah & Louisville Ry., Inc.*,
    No. 3:12-CV-00818-CRS, 2013 WL 5273773 (W.D. Ky. Sept. 17, 2013) ............................ 14

*Brown v. Travelers Cas. Ins. Co. of Am.*,
    2016 WL 1644342 (E.D. Ky. Apr. 25, 2016) ................................................ 38, 39

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) .............................................................. 35

*Butler v. Sterling, Inc.*,
    210 F.3d 371 (6th Cir. 2000) ............................................................. 2, 26

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) .................................................................... 28

*Cerdant, Inc. v. DHL Express (USA), Inc.*,
    2010 WL 3397501 (S.D. Ohio Aug. 25, 2010) ............................................... 27

*Chaz Concrete Co., LLC v. Codell*,
    2006 WL 2453302 (E.D. Ky. Aug. 23, 2006) ............................................... 27

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................ 25, 26

*England v. Advance Stores Co.*,
    No. 1:07-CV-00174, 2008 WL 4372902 (W.D. Ky. Sept. 22, 2008) .......................... 14

*Eversole v. EMC Mortg. Corp.*,
    2007 WL 1558512 (E.D. Ky. May 29, 2007) ................................................ 36

*Farmers Union Mut. Ins. Co. v. Robertson*,
    370 S.W.3d 179 (Ark. 2010) ............................................................. 35

iii

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000)......................................................................................... 27

*Garrish v. United Auto., Aerospace, & Agric. Implement Workers of Am.*,
    149 F. Supp. 2d 326 (E.D. Mich. 2001)............................................................ 26

*Gene & Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ............................................................................ 36

*Givens v. Van Devere, Inc.*,
    No. 2012 WL 4092803 (N.D. Ohio Apr. 27, 2012)........................................... 27

*Henn v. Am. Family Mut. Ins. Co.*,
    295 Neb. 859 (2017) ......................................................................................... 38

*Holaway v. Protective Life Ins. Co.*,
    2007 WL 2904162 (M.D. Ga. Oct. 3, 2007)..................................................... 30

*Hooker v. Burr*,
    194 U.S. 415 (1904)......................................................................................... 28

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ............................................................................ 25

*In re Checking Account Overdraft Litig.*,
    286 F.R.D. 645 (S.D. Fla. 2012) ...................................................................... 35

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ............................................................................ 35

*In re Monumental Life Ins. Co.*,
    365 F.3d 408 (5th Cir. 2004) ............................................................................ 26

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ............................................................................ 35

*In re: State Farm Fire & Cas. Co.*,
    No. 16-3185 (8th Cir. July 25, 2016), *argued* (8th Cir. Jan. 11, 2017) ................................... 11

*Indigo LR LLC v. Advanced Ins. Brokerage of Am. Inc.*,
    717 F.3d 630 (8th Cir. 2013) ............................................................................ 29

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
    634 F.3d 883 (7th Cir. 2011) ............................................................................ 29

*LaBrier v. State Farm Fire and Casualty Co.*,
    No. 2:15-cv-4093 (W.D. Mo.) ................................................................ 11, 12, 34

*Legacy Condos., Inc. v. Landmark Am. Ins. Co.*,
    2008 WL 80373 (S.D. Miss. Jan. 4, 2008) ............................................................. 28

*Lewis v. Casey*,
    518 U.S. 343 (1996)..................................................................................................... 40

*Lincoln Fountain Villas Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.*,
    136 Cal. App. 4th 999 (Cal. Ct. App. 2006) ........................................................... 28

*Lindell v. Synthes USA*,
    2014 WL 841738 (E.D. Cal. Mar. 4, 2014) ............................................................. 35

*Matchniff v. Great N.W. Ins. Co.*,
    2016 WL 7424261 (D. Or. Dec. 20, 2016) .............................................................. 38

*Matthews v. State Farm Fire & Cas. Co.*,
    2007 WL 2127581 (E.D. La. July 24, 2007) ........................................................... 28

*Mays v. Tenn. Valley Auth.*,
    274 F.R.D. 614 (E.D. Tenn. 2011) .................................................................... 34, 36

*McKeague v. TMBC, LLC*,
    847 F.3d 992 (8th Cir. 2017) ..................................................................................... 33

*Mills v. Foremost Ins. Co.*,
    269 F.R.D. 663 (M.D. Fla. 2010) ............................................................................. 36

*Monteleone v. Auto Club Grp. Memberselect Ins. Co.*,
    2014 WL 1652219 (E.D. Mich. Apr. 23, 2014).................................................... 36

*Nat'l Air Traffic Controllers Ass'n v. Sec'y. of Dept. of Transp.*,
    654 F.3d 654 (6th Cir. 2011) ..................................................................................... 27

*Nguyen v. St. Paul Travelers Ins. Co.*,
    2008 WL 4691685 (E.D. La. Oct. 22, 2008) .................................................... 29, 36

*Nucor Corp. v. Gen. Elec. Co.*,
    812 S.W.2d 136 (Ky. 1991)........................................................................................ 31

*Owensboro Mercy Health Sys. v. Payne*,
    24 S.W.3d 675 (Ky. Ct. App. 1999) ......................................................................... 31

*Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*,
    129 F. App'x 955 (6th Cir. 2005) ............................................................................ 28

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
    654 F.3d 618 (6th Cir. 2011) ..................................................................................... 37

*Randleman v. Fid. Nat'l Title Ins. Co.*,
    646 F.3d 347 (6th Cir. 2011) ........................................................ 34

*Rikos v. Proctor & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) ................................................. 33, 35

*Rodney v. Nw. Airlines, Inc.*,
    146 Fed. App'x 783 (6th Cir. 2005) ............................................ 25

*Romberio v. Unumprovident Corp.*,
    385 Fed. App'x. 423 (6th Cir. 2009) .......................................... 27

*Rugumbwa v. Betten Motor Sales*,
    200 F.R.D. 358 (W.D. Mich. 2001) ............................................. 34

*Salesin v. State Farm Fire & Cas. Co.*,
    2003 WL 22299828 (Mich. Ct. App. Oct. 7, 2003) ...................... 28

*Salesin v. State Farm Fire & Cas. Co.*,
    581 N.W.2d 781 (Mich. Ct. App. 1998) ..................................... 28

*Schafer v. State Farm Fire & Cas. Co.*,
    2009 WL 2391238 (E.D. La. Aug. 3, 2009) ............................... 26

*Schumacher v. State Auto. Mut. Ins. Co.*,
    2015 WL 421688 (S.D. Ohio Feb. 2, 2015) ............................... 36

*Shelter Mutual Insurance Co. v. Goodner*,
    477 S.W.3d 512 (Ark. 2015) ..................................................... 38

*Smith v. Allstate Ins. Co.*,
    403 F.3d 401 (6th Cir. 2005) ..................................................... 32

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1988) ............................................... 37, 39

*St. Louis & O'Fallon Ry. Co. v. United States*,
    279 U.S. 461 (1929) ................................................................... 31

*St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*,
    342 F. App'x 809 (3d Cir. 2009) ............................................... 30

*State Farm Fire & Cas. Co. v. Patrick*,
    647 So. 2d 983 (Fla. Dist. Ct. App. 1994) ................................. 28

*Stiers v. State Farm Ins.*,
    2012 WL 2405982 (E.D. Tenn. June 25, 2012) ................... 28, 29

*Stuart v. State Farm Fire & Cas. Co.*,
    No. 14-4001 (W.D. Ark.) ................................................................. 22, 35

*Sutton v. St. Jude Med. S.C., Inc.*,
    419 F.3d 568 (6th Cir. 2005) ........................................................... 27

*Tritschler v. Allstate Ins. Co.*,
    213 Ariz. 505 (Ariz. Ct. App. 2006) ............................................... 28

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................... 2, 25, 26

*Ware v. Metro. Prop. & Cas. Ins. Co.*,
    2016 WL 7209816 (M.D. Ala. Dec. 7, 2016) ................................. 38

*Webb v. Chase Manhattan Mortg. Corp.*,
    2008 WL 2230696 (S.D. Ohio May 28, 2008) ............................... 28

*Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*,
    955 F.2d 831 (2d Cir. 1992) ........................................................... 31

*Wilcox v. State Farm Fire & Cas. Co.*,
    874 N.W.2d 780 (Minn. 2016) ....................................................... 38

*Wilcox v. State Farm Fire & Cas. Co.*,
    No. 14-cv-02798-RHK-FLN, Dkt. 82 at 8 (D. Minn. Sept. 7, 2016) ..................................... 39

*Wiser Oil Co. v. Sizemore*,
    2004 WL 1176297 (Ky. Ct. App. May 28, 2004) .......................... 31

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ............................................. 32, 33, 35

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................... 25

Fed. R. Civ. P. 23(b) ...................................................................... 25

Fed. R. Civ. P. 23(b)(3) ............................................................ 26, 34

**Other Authorities**

BLACK'S LAW DICTIONARY (6th ed. 1990) ...................................... 31

Defendant State Farm Fire and Casualty Company ("State Farm") hereby opposes Plaintiffs' Amended Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (Dkt. 114) ("Plaintiffs' Motion" or "Pl. Mot.").

## **INTRODUCTION**

Plaintiffs seek class certification to resolve approximately 65,000 claims for State Farm's alleged breach of its Kentucky insureds' property damage policies. *See* Pl. Mem. 1-2.[1]  The record shows, however, that individualized inquiry would be required to identify who qualifies for class membership, and thousands of mini-trials would be required thereafter to determine whether State Farm paid the actual cash value for damage to each insured's property up to that insured's actual cost to repair.  The proposed class claims are not susceptible of common proofs.

This case initially was filed by a single named plaintiff – Jeffrey Bailey ("Bailey")[2] – who alleged that State Farm had underpaid a claim he made under his commercial insurance policy. Dkt. 1-2.  Thereafter, Susan Hicks ("Hicks") and Don Williams ("Williams") (collectively, "Plaintiffs") joined the suit and now are the proposed class representatives.  Dkts. 55, 117.  Both are homeowners insureds who allege that State Farm underpaid their respective property damage claims by failing to pay what they contend is the "actual cash value" or "ACV" of their respective losses.  Dkt. 55 ¶ 67.  They complain that when State Farm calculated their ACV payments, it estimated the replacement cost for their property, and then applied depreciation to *all* components of that estimated replacement cost, including labor and materials.  *Id.* ¶¶ 42-43, 47.  They contend that labor costs should not have been depreciated.  *Id.* ¶ 67.

---

[1] For ease of reference, the "Memorandum in Support of Plaintiffs' Amended Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel," Dkt. 114-12, is referred to herein as "Pl. Mem."

[2] Bailey's claims were voluntarily dismissed with prejudice.  *See* Dkt. 117.

Plaintiffs seek certification of a Kentucky class of State Farm insureds who sustained property damage between February 28, 2004 and July 25, 2015 and received an allegedly miscalculated ACV payment.  *See* Pl. Mem. 6.  Labeling this case as "ideal" for class certification, Plaintiffs contend that these individuals' claims can be resolved with ease using data reports and without review of records outside State Farm's possession.  Pl. Mem. 1-3.  They are wrong.

Plaintiffs' Motion fails because they ignore the facts contradicting their position.  They disregard operative language in their policies.  They rely heavily on data reports but misstate what data the reports contain.  And they breeze past extensive, uncontroverted evidence showing that individualized review of State Farm's records *and* evidence in the sole possession of insureds (or their repair contractors) will be required to resolve which insureds sustained injury sufficient to support standing, State Farm's liability as to each, and any resulting damages.  United States Supreme Court and Sixth Circuit precedent holds that if claims or defenses in a proposed class suit cannot be resolved on the merits without extensive individualized proofs, a class cannot properly be certified.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-352 (2011), *Butler v. Sterling, Inc.*, 210 F.3d 371 (Table) (6th Cir. 2000) (unpublished).  Such individualized proofs will be required here.  Certification of Plaintiffs' asserted class accordingly is insupportable under Rule 23 and would violate State Farm's right to due process.

## FACTUAL BACKGROUND

### I.   PLAINTIFFS' ASSERTED CLASS.

Plaintiffs' Second Amended Class Action Complaint asserts claims for breach of contract and for declaratory relief.  Dkt. 55.  Plaintiffs seek to represent a class comprised of:

> All persons and entities that received "actual cash value" payments, directly or indirectly, from State Farm … for loss or damage to a dwelling or other structure located in the Commonwealth of Kentucky, such payments arising from events that occurred from February 28, 2004 through July 25, 2015, where the cost of labor was depreciated.

Pl. Mem. 6.  Plaintiffs exclude insureds who have "received payment from State Farm in the full amount of insurance shown on the declarations page" of their respective policies.  *See id.*

## II.    THE LOSS SETTLEMENT PROVISION OF PLAINTIFFS' POLICY.

Though Plaintiffs' proposed class would include Kentucky property owners with any form of State Farm property damage coverage, the only policy form they address is State Farm's homeowners policy.  The loss settlement provision in that policy states as follows:

**COVERAGE A – DWELLING**

1. **A1- Replacement Cost Loss Settlement – Similar Construction**

a.  We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property…except for wood fences, subject to the following:

(1)  until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, *not to exceed the cost to repair or replace the damaged part of the property*;

(2)  when the repair or replacement is actually completed, we will pay the covered *additional amount you actually and necessarily spend* to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(3)  to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, ….

*See*, *e.g.* Williams Certified Policy, attached as Ex. 1, at 5731 (italic and underline emphases supplied, bold emphases original).[3]

The policy generally provides for a two-step loss settlement process.  The insured initially is paid the ACV of his property (less deductible) *only* up to the insured's actual cost of repair or the applicable limits of coverage.  *See* Ex. 1 at 5731.  Then, if the insured incurs *additional*,

---

[3] For ease of reference, documents produced by State Farm are referenced by the non-zero numerical digits preceding "PROD."  For example, BAILJ00005731PROD is cited as 5731.

reasonable expense to complete necessary repairs, he or she may request replacement cost benefits for that additional amount. *Id.* The policy does not bind State Farm to prepare or pay based on its own ACV estimate, replacement cost benefits can be paid at the outset of the claim, and payment beyond an insured's actual, reasonable cost to complete repairs is never required. *Id.*

## III.    PLAINTIFFS' INDIVIDUAL CLAIMS

### A.    The Hicks Loss

Hicks' home was damaged by a fire on January 4, 2014.[4]  A State Farm adjuster inspected the damage and prepared a replacement cost estimate using a software program called "Xactimate." *See* Nov. 18, 2016 Expert Report of Michael J. Berryman, attached as Ex. 3, at 3,7. That estimate included more than 700 line items identifying each repair task needed for each portion of Hicks' property. Dkt. 55-2. Depreciation was applied to some line items, but not others. *Id.* When it was applied, both material and labor costs estimated for the task were depreciated. *Id.*

The total replacement cost State Farm originally estimated for Hicks' loss was $273,306.97. Nov. 10, 2016 Dep. of Susan Hicks, attached as Ex. 2, at 90:22-91:5; Dkt. 55-2 at 4. State Farm subtracted depreciation totaling $72,902.00 and Hicks' $500 deductible, and then issued an ACV payment of $199,904.47. Ex. 2 at 102:3-10; Dkt. 55-2 at 4. ██████████

████████████████████████████████████████████████████████

Hicks completed repair of her home and submitted requests for replacement cost benefits, which State Farm evaluated. Ex. 2 at 149:8-20. By the conclusion of claim handling, State Farm had paid Hicks a total of $291,805.67 in ACV and replacement cost payments for structural damage. Ex. 2 at 209:16-20. Hicks has admitted that State Farm's total payment covered all costs she incurred to complete repairs. Hicks Resp. to SF RFA, attached as Ex. 4, at 2; Ex. 3 at 8.

---

[4] *See* Dkt. 55 ¶ 6; Nov. 10, 2016 Dep. of Susan Hicks, attached as Ex. 2, at 55:9-22.

State Farm's expert Michael Berryman, a general contractor and structural repair consultant with nearly 40 years of experience, ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████ ██ ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██ █████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

█████████

Further, the documentation shows that ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████████████ █5

### B.    The Williams Loss

Williams' home was damaged in a fire on May 23, 2014. Dkt. 55 ¶¶ 9-10. A claim representative inspected the damage and prepared an Xactimate estimate with more than 400 line item repairs for the structure.  Dkt. 55-3; Nov. 9, 2016 Dep. of Don Williams, attached as Ex. 5, at 85:21-87:17.  State Farm estimated a replacement cost of $206,068.88. Dkt. 55-3.  Depreciation of $48,752.88 and Williams' $1000 deductible were subtracted, and State Farm issued an ACV payment of $156,316. *Id*.; Ex. 5 at 87:1-13, 105:17-106:6. A supplemental ACV payment later was made for repairs that Williams' contractor identified. Ex. 5 at 132:10-19, 135:17-136:13.

Williams ultimately decided to purchase a pre-fabricated home rather than rebuild.  *Id*. at 141:14-143:15.  Under State Farm's claim handling guidelines, Williams could have received replacement cost benefits for that replacement if his actual cost had exceeded his ACV payment. *See*, *e.g.*, Mar. 23, 2017 Decl. of MacMillan, attached as Ex. 7, at ¶ 3 and Ex. A thereto, at 19370-371.  His actual cost was just $75,000, however, far less than State Farm's total ACV payment of $156,316, and he did not seek replacement cost benefits. Ex. 5 at 143:24-144:4.

### C.    The Bailey Loss.

Although Bailey is dismissed from this case, his claim still is illustrative of the individual variations within the putative class.  Bailey's dental office was damaged in a tornado on March 2, 2012. Dkt. 55 ¶¶ 22-25.  After inspection, a State Farm claim representative prepared an Xactimate estimate identifying more than 300 line-item repairs.  *See* Bailey Apr. 10, 2012 Estimate, attached as Ex. 6.  State Farm's original replacement cost estimate totaled $78,643.45.  *Id*. at 1114-1115.

---

[5] State Farm's higher ACV payments occurred because ████████████████████
████████████████████████████████████████████████████████████



████ State Farm's final replacement cost estimate totaled $98,210.66, with $8,644.58 in depreciation, and State Farm's ACV payments totaled $88,373.82.  Dkt. 55-1 at 3-4.

## IV. THE STATE FARM ESTIMATING PROCESS, APPLICATION OF DEPRECIATION, AND LIMITATIONS ON DATA REPORTS.

Plaintiffs contend that Xactimate estimates are prepared and depreciation is applied "uniformly," and that electronic queries can be used to identify who received ACV payments and quantify applied labor depreciation.  *See* Pl. Mem. 3, 4, 11-12 and n.3, 19-20.  They are wrong.

### A. Variations in the Application of Depreciation in Xactimate Estimates.

*If* State Farm prepares an electronic estimate for a loss,[6] the estimate is prepared using Xactimate.  Ex. 8 ¶¶ 9-10; Ex. 9 at 17:5-18:8.  When using Xactimate, an adjuster identifies and measures each damaged portion of the insured property and then enters that information into the

---

[6] ████████████████████████████████
████████████████████████████████ Not all claims have Xactimate estimates.  *See* Pl. Mem. at 2.

software along with the tasks identified to complete repairs.  *See* Ex. 3 at 3-5; Ex. 9 at 20:11-21:7.



Most Xactware "unit" prices include both material and labor components.  Dkt. 4 ¶ 5.  However, there are some line items that are "materials only," and others that are solely for labor.  *Id.*[7]

Before July 25, 2015 in Kentucky, State Farm applied depreciation to

*See* Ex. 9 at 52:11-53:9.  But depreciation was not applied "uniformly."  *See* Pl. Mem. 2-3.

**B.    ACV Payments Cannot Systematically Be Identified by Electronic Queries Against Estimate Data Because Estimates Are Not Evidence of Payments.**

Plaintiffs assert that State Farm "relies on Xactimate to store and manage *claim data* in a uniform fashion," and that Xactware can run data reports for State Farm to show what labor depreciation was actually applied for putative class members' claims.  Pl. Mem. 3, 19-20 (emphasis supplied).  Not so.

State Farm's Xactimate estimates are stored in electronic format in a database maintained by Xactware.  Aug. 15, 2016 Decl. of Chris Blair, attached as Ex. 10, ¶ 7.

---

[7] State Farm's practice in Kentucky (and elsewhere) was generally *not* to apply depreciation to stand-alone labor charges, such as for roof tear-off or debris removal.  Dkt. 4 ¶ 5.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

For example, ██████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████  ██  ████████████████████████  ██

██████████████████████████████████████████████

Similarly, one cannot simply add figures across multiple estimates to obtain accurate totals of applied depreciation or claim payment amounts.  For example, ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████  ████████

███████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████  To

_____

[8] Indeed, both Plaintiffs received explanatory written materials with their respective estimates explaining that State Farm will consider paying replacement cost up front upon an insured's presentation of a signed contract.  *E.g.*, Dkt. 55-2 at 4.

█  ███████████████████████████████████████████████████

███████████████████████████████████████

verify the amount of any labor depreciation actually applied requires individualized review and analysis of the records for each claim, including claim file notes, imaged correspondence, and imaged payment documents. Ex. 24 at 4.

### C. Accurate Reports of ACV Payments and Applied Labor Depreciation Cannot be Generated Through Electronic Queries Against State Farm's Claim Data.

One likewise cannot identify ACV payments with labor depreciation applied simply by applying electronic queries to the data in State Farm's electronic claim handing system ("ECS"). Ex. 8 ¶ 6. Plaintiffs err in asserting that such reports have been or can be run. *See* Pl. Mem. 3.

State Farm can run (and has produced) reports against ECS that identify each structural damage claim payment issued to each insured by date and amount. Ex. 8 ¶ 7; Kentucky Claim Data Report, attached as Ex. 27. ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Thus, determining what was paid as ACV and what depreciation was applied requires individualized review of the insured's complete file. *See* SF Resp. to Interrog., attached as Ex. 11, at 3-4; Ex. 10 ¶¶ 15-21; Ex. 9 at 33:5-35:1; Ex. 12 at 35:4-36:16, 43:4-5; *see also infra* VI.A.

### D. State Farm's Records Do Not Contain "Labor Depreciation" Values, And Calculating Such Amounts Requires Extensive Individualized Analysis.

Plaintiffs also err in asserting that State Farm can use electronic queries to generate systemic reports of what labor depreciation amounts actually were applied to State Farm payments. *See* Pl. Mem. 9-11. Such queries cannot be run against estimate data because individualized review is needed to identify which estimates matter (those used to calculate claim payments), and because

---

███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████

supplemental estimates often restate depreciation from earlier estimates.  *See supra* IV.B. ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

 Obtaining labor depreciation dates and amounts, and then matching associated replacement cost payments by date and amount actually requires an individualized, laborious, and costly process.  That is illustrated by the file review State Farm was required to conduct in another labor depreciation action, *Amanda LaBrier v. State Farm Fire and Casualty Co.*, No. 2:15-cv-4093 (W.D. Mo.), in order to produce exactly the same information Plaintiffs have demanded here and say is easily available.[11]  To comply with the *LaBrier* discovery order (which now is before the Eighth Circuit on a Petition for Writ of Mandamus),[12] State Farm developed a detailed procedure for individually analyzing each putative class member's claim materials and estimates.  *See* Ex. 8 ¶¶ 33-39 and Exs. A-B thereto.  In general terms, the steps were as follows:

████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████
██████████████████████████████

████████████████████████████████████████████████████████████████████
█████████████████████████████████████████

████████████████████████████████████████████████████████
██████████████████████████

---

[11] *See* Pl. Mem. 9-11.  Plaintiffs have moved to compel State Farm's response to interrogatories identical to those State Farm was ordered to answer in *LaBrier*.  *See* Dkt. 83-1.

[12] Pet. for Writ of Mandamus, *In re: State Farm Fire & Cas. Co.*, No. 16-3185 (8th Cir. July 25, 2016), attached as Ex. 13, *argued* (8th Cir. Jan. 11, 2017).



State Farm took hundreds of claims personnel away from their regular duties and assigned them to the review for more than a month.  By the time the Eighth Circuit stayed the review, many thousands of hours had been spent at a calculated cost to State Farm of millions of dollars.[13] Applying that experience here, reviewing approximately 65,000 claims for this case likely would also cost millions and require many thousands of hours to complete.  Ex. 14 ¶ 4; Ex. 15 ¶¶ 15-16.

### E. The Merits of the Asserted Class Claims Cannot Be Resolved Without Insureds' Records.

Even if performed, the individualized review of files outlined above would not generate all the information needed to resolve the asserted class claims.  That is because State Farm does not have complete records showing what repairs each insured has completed and the cost for those repairs.  Ex. 8 ¶¶ 20-22.  Insureds often complete repairs without sending in contracts or receipts because submission is only necessary if their incurred cost exceeds their initial payment *and* they

---

[13] July 25, 2016 Decl. of Lisa O'Toole, attached as Ex. 14, ¶ 4; ███████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████ State Farm's updated estimate of the expense to complete the *LaBrier* review was more than $12,000,000.00.  Ex. 14 ¶ 4.

request replacement cost benefits. *Id*. ¶¶ 21-22; *see also supra* II. Because State Farm's payment obligation is capped at the insured's actual cost to repair, complete repair records are of critical importance to determining who may have sustained actual injury due to State Farm's alleged ACV miscalculations and what their damages might be. *See infra* VI.A.

## V.     PLAINTIFFS MISINTERPRET AND OVERSTATE THE DATA THEY RELY UPON FOR CLASS CERTIFICATION.

Plaintiffs point to data State Farm relied on at removal, data it produced in discovery, and data relating to supplemental payments issued to a set of Kentucky insureds as supposed evidence that their asserted class claims can easily be resolved without extensive individualized fact-finding. *See* Pl. Mem. 3, 11-12 and n.3, 19. The record does not support them.

### A.     The Removal Data.

Plaintiffs contend that at removal, State Farm was able to identify a subset of class members and "calculate the labor costs it depreciated in Kentucky" for those insureds during the year 2012. *See* Pl. Mem. 11 n.3, 12. That misstates the removal data.

At removal, State Farm could only attempt to identify claims where labor depreciation *may* have been applied (for the reasons set out above). *See supra* IV.A-B. To do that, State Farm asked Xactware to identify only the *last* uploaded estimate for all claims with estimates that were generated in 2012 and which showed depreciation applied to labor costs. *See* Ex. 8 ¶ 30; Dkt. 4 ¶ 6. State Farm then asked Xactware to run a report identifying the claim number, the replacement cost, ACV, and total depreciation values shown on that subset of estimates, and to separately calculate what portion of total depreciation for the estimate that was attributable to labor costs. *See id.* ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

The removal data merely shows claims for a single year where the most up-to-date estimate reflected that some portion of the claim may have been paid on an ACV basis with depreciation applied to labor costs.  State Farm was careful to disclose to Plaintiffs and the Court upon removal that the data it was relying upon represented an *approximation* of labor depreciation *potentially* applied for Kentucky claims with estimates uploaded in 2012.[14]  *See* Dkt.4 ¶ 6.  Due to the disconnect between Xactimate estimates and payment data, State Farm was unable to use electronic queries against its available data to weed out claims where replacement cost was paid up front or to quantify all labor depreciation for claims with ACV payments.  *See supra* IV.B-C, E.  And the removal data certainly did not match replacement cost payments to prior repairs or calculate interest.  The data was not (and was not presented as) a tally of putative class members or their damages.  ███████████████████████████████

████████████████████████████████████████████████████████████████████

## B.      The Report.

Plaintiffs similarly overstate the data in a report State Farm produced (the "Report).  *See* Pl. Mem. 3, 19; Ex. 27.  For that Report, State Farm ███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[14] State Farm's showing was fully sufficient under the standard for removal, which allows presentation of a reasonable approximation of amounts potentially at issue based on available records.  *See England v. Advance Stores Co.*, 2008 WL 4372902, at *2 (W.D. Ky. Sept. 22, 2008); *Brown v. Paducah & Louisville Ry., Inc.*, 2013 WL 5273773, at *3-4 (W.D. Ky. Sept. 17, 2013).

███████████████████████████████████████████████████████████████

████████████████████████████████████

Like the removal data, the Report is not a list of class members and does not calculate damages under Plaintiffs' formula. ████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████          █████████████████████████████ *That* information cannot be obtained without extensive individualized review of each putative class member's file because estimate data does not reliably track payment data, █████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████

C.      **The Kentucky Supplemental Payments.**

Plaintiffs' description of supplemental payments State Farm issued to certain Kentucky insureds is inaccurate as well.  *See* Pl. Mem. 3-4, 19-20.  These payments were not "refunds," they were not calculated according Plaintiffs' damages formula, and the "program" State Farm used to issue the payments was neither automated nor simple.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

_____

■  ████████████████████████████████████████████

## VI. STATE FARM'S EXPERT EVIDENCE DEMONSTRATES THE NEED FOR INDIVIDUALIZED PROOFS.

### A. O'Connor's Opinions Regarding The Need for Individualized Evidence to Identify Class Members and Calculate Their Damages.

State Farm's forensic accounting expert, Michael O'Connor, ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████   ███████   █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

    ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

    █   ██████████████████████████████████████████████

        ██████████████████████████████████████████████

        ████████████

    █   ████████████████████████████████   ████████████

        ████████████████████████████████   ███   ████████

        ████████████████████████████████

---

[16] As previously noted, State Farm does not require policyholders to submit documentation of repair costs unless and until they seek replacement cost benefits.  Ex. 8 ¶¶ 20-22; Ex. 24 at 22.

**B.**      **Berryman's Opinions Regarding Repair Estimating and Reconstruction.**

Plaintiffs' policies do not even obligate State Farm to prepare a damage estimate.  Ex. 1 at

5731.  But for claims *with* such estimates, State Farm's expert Berryman has offered opinions

████████████████████████████████████████████████████████

████████████████████████████████████  ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████  ████████  ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  ██████████████

**C.**      **Dr. Prowse's Opinions Regarding the Need for Individualized Inquiry to Identify Who May Have Sustained injury.**

State Farm's expert, Dr. Stephen Prowse, Ph.D, CFA, ████████████████████

████████████████████████████████  ████████████████████████

_____

██  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

## VII.   PLAINTIFFS' EXPERT'S OPINION IS UNPERSUASIVE AND UNRELIABLE.

Plaintiffs' expert Saul Solomon ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████▪

█████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

_____

  ▪ ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████ State Farm has separately

moved to strike Solomon's opinion for these and other deficiencies.

**A.      Applying the Methodology Based on Data from the Report Results in Errors.**

Solomon's proposed approach ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████  ████████████████  ███████████████

███████████████████████████████████████████████████████

███████████████ ██  █████████████████████████████

        ████████████████████████████████████

██████████████████ ███████████████████████████████ ██

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████

───────────────────────────

    ██  ████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

██████████████████████████████████   ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████   Solomon thus has not developed a methodology even for identifying members of the class, much less for calculating their damages, based solely on data gathered from electronic queries and without individualized review.

### B.   The Error Rate for Solomon's Methodology is Unknown.

When confronted with the instances in which his methodology would erroneously identify insureds as class members or miscalculate their damages, ██████████████████████

█████████████████████   ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████   ███████████████   ███████████████████

████████████████████████████████████████████

██████████████████████████████ For these reasons alone, his opinions are unpersuasive.

---

■ ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

-24-

### C. Solomon's Methodology Does Not Match Plaintiffs' Liability Theory and Ignores Their Policy Language.

Solomon's damages formula further must be disregarded because it ignores the contract language governing State Farm's payment obligation *and* is inconsistent with Plaintiffs' liability theory. The policies at issue cap State Farm's payment obligation to no more than insured's actual cost to complete repairs. Ex. 1 at 5731. Similarly, Plaintiffs' liability theory is that insureds were entitled to ACV payment covering "the full cost of the labor necessary to repair or replace" their property. *See* Dkt. 55 ¶ 46; *see also* Dkt. 42 at 14. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

### ARGUMENT

Rule 23 "does not set forth a mere pleading standard." *See Behrend*, 133 S. Ct. at 1432 (citation omitted). It instead requires that proposed class representatives supply "*evidentiary proof*" to demonstrate affirmatively that all prerequisites of Rule 23(a) and at least one sub-part of Rule 23(b) are satisfied before class certification may be granted. *Id.* (emphasis supplied); *see also Dukes*, 564 U.S. at 350-51. It is well-settled that this Court must apply a "rigorous analysis" in considering Plaintiffs' motion, and it is Plaintiffs' burden to establish by a preponderance of the evidence that certification is proper. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996). The Court's analysis should consider both the evidence pertinent to Plaintiffs' case in chief *and* the evidence State Farm likely will present in rebuttal. If common proofs will not be available, class certification should be denied. *Rodney v. Nw. Airlines, Inc.*, 146 Fed. App'x 783, 786-87 (6th Cir. 2005).

Here, Plaintiffs only seek certification under Rule 23(b)(3). Certification under that provision is improper unless the proposed class excludes individuals who lack standing, and the class representatives' proof of their own claims (with other "common" proofs) will establish the class claims as well. *Behrend*, 133 S. Ct. at 1432. As set forth more fully below, Plaintiffs have not established these or the other prerequisites for class treatment by a preponderance of the evidence. Litigation of this action on a class basis would impair State Farm's right to defend itself, thereby abridging its substantive rights in violation of the principles of due process and the Rules Enabling Act.[22]

## I.   PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE IT INCLUDES MANY MEMBERS WHO LACK STANDING.

Plaintiffs' class certification argument does not address the threshold question of standing, which this Court must consider. "The 'irreducible constitutional minimum' of standing requires a plaintiff to show: '(1) it has suffered an injury in fact … (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision.'" *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dept.*

---

[22] *Dukes*, 564 U.S. at 367 ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its . . . defenses to individual claims.") (internal citations omitted); *Butler*, 210 F.3d at 371 (noting that the "Advisory Committee Notes to Rule 23(b)(3) advise against class certification where a defendant has a defense to liability that will vary with each individual class member" and affirming denial of class certification where individual issues for statute of limitations defense threatened to "overwhelm[]" the jury); *In re Monumental Life Ins. Co.,* 365 F.3d 408, 420 (5th Cir. 2004) ("The predominance of individual issues necessary to decide an affirmative defense may preclude class certification."); *Garrish v. United Auto., Aerospace, & Agric. Implement Workers of Am.*, 149 F. Supp. 2d 326, 333 (E.D. Mich. 2001) (denying class certification because the defendants should not "realistically be expected to argue the applicability of [the] statute of limitations defenses to numerous class members individually at one trial" (quoting *Butler*, 210 F.3d at 371)); *Schafer v. State Farm Fire & Cas. Co.,* 2009 WL 2391238, at *6 (E.D. La. Aug. 3, 2009) (denying class certification where "assessing [the defendant's] affirmative defense would require individualized inquiry and would predominate over any issues common to the class").

-26-

*of Transp.*, 654 F.3d 654, 659 (6th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)).

"Article III standing requirements apply equally to class actions." *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005). Accordingly, courts within the Sixth Circuit have denied class certification where the class was defined to include a substantial number of uninjured individuals. *See, e.g., Romberio v. Unumprovident Corp.*, 385 Fed. App'x. 423, 431 (6th Cir. 2009) (rejecting proposed class of all persons denied benefits by insurer because "persons whose benefits were denied or terminated would necessarily include many individuals whose claims were *properly* denied" and suffered no injury); *Anderson v. United Fin. Sys. Corp.*, 281 F.R.D. 292, 295 (N.D. Ohio 2012) ("A properly defined class includes only members who would have standing to bring suit in their own right.") (internal quotes omitted); *Chaz Concrete Co., LLC v. Codell*, 2006 WL 2453302, at *6 (E.D. Ky. Aug. 23, 2006) (holding that a proposed class would be "overly broad if it would include members who have not suffered harm at the hands of the [d]efendant") (internal quotes omitted).[23]  Plaintiffs' proposed class suit fails the test for standing because it would include individuals who did not sustain injury caused by State Farm's ACV calculations.

## A. Insureds Who Have Been Paid Their Actual, Incurred Cost to Repair Are Not Injured.

A plaintiff who already has received full payment from a defendant does not have cognizable injury.[24]  As the Supreme Court explained long ago, a person who has been "paid in

---

[23] *See also Givens v. Van Devere, Inc.*, No. 2012 WL 4092803, at *13-14 (N.D. Ohio Apr. 27, 2012) (rejecting class definition as overbroad where some putative class members "suffered no harm"); *Cerdant, Inc. v. DHL Express (USA), Inc.*, 2010 WL 3397501, at *6 (S.D. Ohio Aug. 25, 2010) (declining to certify class that included persons who lacked standing because they failed to comply with notice provision).

[24] *See Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 Fed. Appx. 409, 411 n.1 (6th Cir. 2013) (holding that insurer could not satisfy standing requirements where its alleged losses were "already repaid" and "[a]ny injury suffered … has therefore been remedied"); *Webb v. Chase*

full the entire amount of money" he is due under a contract "surely cannot be heard to complain

that nevertheless, the obligation of his contract was impaired." *Hooker v. Burr*, 194 U.S. 415, 419

(1904).[25] In that circumstance, "he cannot, of course, ask the interference of the court." *Id.* [26]

Plaintiffs' policies limit State Farm's payment obligation to no more than the insured's

total, actual incurred cost to complete repairs.  Ex. 1 at 5731.  Where such a payment cap is in

place, it routinely has been enforced, in part on the basis that the insured otherwise would receive

a windfall.  *See, e.g., Stiers v. State Farm Ins.*, 2012 WL 2405982, at *4 (E.D. Tenn. June 25,

2012) ("Even if there is some dispute with the amount of the ACV payment … the actual costs of

repair cap the insurer's obligation when a replacement cost adjustment has been made.").[27]  Yet

Plaintiffs' proposed class definition will include individuals who *have been paid* an amount

sufficient to cover the full cost for labor needed to repair their property, and who accordingly lack

---

*Manhattan Mortg. Corp.*, 2008 WL 2230696, at *22 (S.D. Ohio May 28, 2008) ("[Plaintiff] lack[ed] standing to assert any claims relating to the assessment of late charges or to the attorneys' fees that were reimbursed by Chase").

[25] More recently the Court held that an *unaccepted* offer of full payment after a complaint is filed does not defeat standing for a class representative. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670 (2016). But all the Justices recognized that standing cannot exist where there is an *accepted* offer of full payment. *See id.* at 671 n.5; *see also id.* at 685 (Alito, J., dissenting).

[26] In contrast, policies *without* a cap on the ACV payment obligation have been deemed to require payment of ACV regardless of an insured's cost to repair. *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F. App'x 955, 962 (6th Cir. 2005); *Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 512 (Ariz. Ct. App. 2006) (same).

[27] *See also Legacy Condos., Inc. v. Landmark Am. Ins. Co.*, 2008 WL 80373, at *2 (S.D. Miss. Jan. 4, 2008); *Lincoln Fountain Villas Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.*, 136 Cal. App. 4th 999, 1009-11 (Cal. Ct. App. 2006); *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983, 983-84 (Fla. Dist. Ct. App. 1994); *Matthews v. State Farm Fire & Cas. Co.*, 2007 WL 2127581, at *2 (E.D. La. July 24, 2007).  One case takes a contrary view. *See Salesin v. State Farm Fire & Cas. Co.*, 581 N.W.2d 781, 791-92 (Mich. Ct. App. 1998). But *Salesin* did not meaningfully address the policy language that payments are not to exceed the cost to repair or replace the damaged property. *See id.* Moreover, the *Salesin* court ultimately held that a class could not be certified because, as here, the only supposedly common issues concerning liability had already been resolved. *Salesin v. State Farm Fire & Cas. Co.*, 2003 WL 22299828, at *2 (Mich. Ct. App. Oct. 7, 2003).

standing to sue for breach or declaratory relief.  *See* Pl. Mem. at 6.  The class is defined only in respect to whether labor depreciation was applied for ACV payments, and without regard to whether full payment for the loss was made.

For example, Plaintiffs' class definition does not exclude individuals who completed repairs at a cost equal to or less than their ACV payment.  These individuals received payment not only for the full cost of labor, but also the full cost of materials needed to replace their damaged property.  The uncontroverted evidence shows that such individuals exist.  Ex. 24 at 22, 39-41.[28]

Likewise, many insureds who would meet Plaintiffs' class definition were paid their full incurred cost to complete repairs through payment of ACV in combination with replacement cost benefits.  ███████████████████████████████████████████ ███████████████████████████████████████████ Yet none of these individuals have sustained cognizable, Article III injury.  As has been held in this Circuit and elsewhere, insureds cannot recover for breach of contract where they have been fully paid.  *See*, *e.g.*, *Stiers*, 2012 WL 2405982, at *4-5  (plaintiffs had no claim for breach where paid replacement cost benefits covered their actual cost to complete repairs); *Nguyen v. St. Paul Travelers Ins. Co.*, 2008 WL 4691685, at *5 (E.D. La. Oct. 22, 2008) (denying certification of claims alleging one component of ACV payments was systematically underpaid because "for each class member, the issue is whether the total amount paid, not just a discrete, uniformly applicable component of that payment, was sufficient to satisfy State Farm's contractual obligation").[29]  Hicks

---

[28] Some insureds who have been fully paid can be identified through individualized review of State Farm's records.  *Id*.  For others, discovery of the insureds' records and, possibly a home inspection, will be required.  *See id.* at 22.

[29] *See also Indigo LR LLC v. Advanced Ins. Brokerage of Am. Inc.*, 717 F.3d 630, 633 (8th Cir. 2013) ("The difficulty with Indigo's theory of injury is that Indigo presented no evidence to show that it was out-of-pocket for any retention amount."); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 890 (7th Cir. 2011) ("If a given policyholder was fully compensated for the

exemplifies this standing problem – she has admitted that State Farm's total payment for her loss fully covered her actual cost to repair her home (less her deductible).  *See supra* Bkgd. III.A.

Finally, Plaintiffs' class definition does not address instances where State Farm's ACV payment, even with labor depreciation, covered the *undepreciated* cost for estimated repairs due to errors in the estimate.  Again, Hicks' claim illustrates this.[30]

### B.  Standing Cannot Be Grounded Solely Upon Claimed Prejudgment Interest.

O'Connor's analysis  Plaintiffs nevertheless contend that such insureds still can demonstrate standing based on a supposed right to pre-judgment interest for the time during which labor depreciation amounts allegedly were unpaid.  Pl. Mem. 10 n.2; *see also id.* at 4 n.1.

Plaintiffs' standing argument for this substantial subset of class members first fails because no breach can be shown if State Farm has paid an insured's actual cost to repair.  *See* Ex. 1 at 5731; *see also supra* Bkgd. II.  For Article III standing, "a potential claim for [prejudgment] interest alone" is insufficient where the underlying sum in dispute already was paid before litigation. *Holaway v. Protective Life Ins. Co.*, 2007 WL 2904162, at *2 (M.D. Ga. Oct. 3, 2007).

---

damage attributable to the hailstorm, then State Farm will have satisfied its contractual obligation *regardless* of whether it used" particular criteria to analyze claim); *St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809, 812-14 (3d Cir. 2009) (class of insureds alleging they were underpaid because of a "uniform process that the Insurers apply to all claims" had "reduc[ed] or automatically appl[ied] undisclosed cap[s]" to medical expense claim payments could not be certified because individualized inquiries necessary to determine if insurer satisfied overall obligation "to pay 'reasonable' medical expenses") (quotation omitted).

[30] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮ Hicks benefitted therefrom through an ACV with corresponding inflation.

Further, even assuming a breach occurred as to some class members, Kentucky law does not support Plaintiffs' attempted claims for prejudgment interest. A common law right to such interest arises in Kentucky only if the alleged damages are liquidated, *i.e.*, "[m]ade certain or fixed by agreement of parties or by operation of law." *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)). Amounts due for damage to property -- which is what Plaintiffs seek here – are considered unliquidated (*id.*), and it is an abuse of discretion to award prejudgment interest for such sums where a defendant has not acted in bad faith. *See Wiser Oil Co. v. Sizemore*, 2004 WL 1176297, *5 (Ky. Ct. App. May 28, 2004) (trial court abused its discretion in awarding prejudgment interest where defendant refused access to property based on innocent error regarding its property rights); *Owensboro Mercy Health Sys. v. Payne*, 24 S.W.3d 675, 679 (Ky. Ct. App. 1999) (prejudgment interest properly denied where defendant "in good faith, disputed its liability and could not have anticipated the extent of that liability").[31] This Court already has acknowledged that the question of labor depreciation is novel in Kentucky and dismissed Plaintiffs' statutory claim for bad faith based on State Farm's ACV calculations. It would be inequitable to award prejudgment interest here.

Finally, even if prejudgment interest might have been appropriate, individualized inquiry as to thousands of class members would be required to determine who was fully paid, when full payment was made, and whether the insured ever submitted a proof of loss that could serve to trigger prejudgment interest. Plaintiffs' homeowners policies impose a deadline for filing a proof of loss. *See* Ex. 1 at 5734 (policy condition providing that loss is payable "60 days *after we receive*

---

[31] *See also St. Louis & O'Fallon Ry. Co. v. United States*, 279 U.S. 461, 483 (1929) (prejudgment interest denied in bona-fide dispute where the defendant could not know "what, if anything, it should pay" until judgment); *accord Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992) (prejudgment interest may be inappropriate where "there is a good faith dispute" on liability) (citations omitted).

*your proof of loss* and: a. reach agreement with you; b. there is an entry of a final judgment; or c. there is a filing of an appraisal award with us"). And then, prejudgment interest does not run as to claims for damage to property until "thirty (30) days after receipt by the insuring company of a proof of loss executed and sworn by such resident, to the best of his knowledge and belief claiming any such amount to be due." *See* KRS 304.14-400.

## II.   THE PROPOSED CLASS IS OVERBROAD BECAUSE IT INCLUDES INDIVIDUALS WHOSE CLAIMS ARE TIME-BARRED.

Plaintiffs' asserted class period extends to include insureds who sustained losses from February 28, 2004 through July 25, 2015. However, Condition 6 in the homeowners policy, entitled "**Suit Against Us**," states that "No action shall be brought unless there has been compliance with the policy provisions. The action must be started *within one year after the date of loss or damage*." *Id.* at 5734 (underline and italic emphasis supplied). That limitation period is fully enforceable *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 406 (6th Cir. 2005) (policy's one-year suit limitations provision was enforceable under Kentucky law).[32] The claims of putative class members whose suit limitation period had expired by the time this action was commenced are time-barred and cannot properly be included in the asserted class.[33]

## III.   ASCERTAINABILITY FAILS DUE TO THE NEED FOR INDIVIDUALIZED PROOFS TO DETERMINE WHO QUALIFIES FOR CLASS MEMBERSHIP.

An asserted class must be "ascertainable," such that its members reasonably can be identified by objective criteria and without individualized fact-finding by the Court. *See* Pl. Mem. 7 (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). One cannot ascertain

---

[32] Different suit limitations periods apply under other policy forms. Bailey Certified Policy, Dkt. 35-2, at 70 (providing for 2-year limitation period).

[33] This Court dismissed Plaintiffs' statutory bad faith claim for alleged deception. *See* Dkt. 42 at 15-16. That precludes any tolling based on supposed concealment.

which putative class members would have standing here simply by determining if they received an ACV payment with labor depreciation applied.  It is undisputed that individualized inquiry will be required to identify those individuals who were not paid an amount sufficient to cover their cost of repair, or the limits of their coverage.  *See supra* Arg. I.A.[34]  None of Plaintiffs' authorities found ascertainability under like circumstances.  *See* Pl. Mem. 8-11.

For example, in *Young*, insureds alleged their insurer had overcharged them by applying a tax to their premiums that either was not owed at all or was miscalculated using the wrong tax rate. 693 F.3d at 535.  The Sixth Circuit found ascertainability satisfied where the insurer's records contained the pertinent property locations and the specific amount charged to each insured, and programming apparently could be applied to identify who had been overcharged and by what amount.  *Id.* at 539-40.  Here, by contrast, ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████[35]

Plaintiffs' reliance on *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) is similarly misplaced.   There, the Court anticipated identifying purchasers of an allegedly mislabeled product through review of the defendant's sales records and by allowing purchasers to submit receipts or affidavits.  *Id.* at 526.  Here, in contrast, class membership depends on the nature of claim payments received, ████████████████████████████████

███████████████████

■ ██████████████████████████████████████████ ████████████████████████████████████████████████████████

[35] *McKeague v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) similarly is distinguishable. Class members there were identified by review of the defendant's files merely to confirm the form of contract that applied for each putative class member.

## IV.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE PREDOMINANCE OR SUPERIORITY.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  To demonstrate predominance, "a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate" over those regarding individualized proofs, and fails where "substantial, individual inquiries" are required.  *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011).  Similarly, superiority fails where the need for individualized determinations essentially eliminates the very efficiency that class litigation is intended to achieve.  *See Mays v. Tenn. Valley Auth.*, 274 F.R.D. 614, 635-36 (E.D. Tenn. 2011); *Rugumbwa v. Betten Motor Sales*, 200 F.R.D. 358, 367-68 (W.D. Mich. 2001). Plaintiffs' asserted class claims require extensive individualized proofs.  Their authorities do not support Rule 23(b)(3) certification.

### A.   The Need for Individualized Determinations on the Merits for Each Putative Class Member Precludes a Finding of Predominance.

Plaintiffs open their predominance argument with the assurance that "Courts have uniformly found that common issues predominate in cases challenging insurers' depreciation of labor costs" (*see* Pl. Mem. 16), but they fail to disclose the status of two cases they cite. The Eighth Circuit accepted State Farm's class certification appeal in *LaBrier*, and further is reviewing on a petition for writ of mandamus the order requiring State Farm to answer extensive, individualized merits discovery for each putative class member's claim in that case.  *See Amanda Labrier v. State Farm Fire & Cas. Co.*, Nos. 16-3185 & 16-3562 (8th Cir.).  Similarly, the Eighth Circuit accepted Rule 23(f) petitions from the class certification orders in *Green* and *Stuart*, and those matters are

being held in abeyance.  *Green v. Am. Modern Home Ins. Co.*, No. 16-3786 (8th Cir.); *Stuart v. State Farm Fire & Cas. Co.*, No. 16-3784 (8th Cir.).[36]

Plaintiffs' remaining authorities on predominance also are unhelpful.  *See* Pl. Mem.8-11, 17-20.  State Farm already has addressed the differences between this action and the claims in *Young* and *Rikos.  See supra* Arg. § III.  Plaintiffs' cases holding that individualized damages calculations *taken alone* do not defeat predominance are inapt because the individualized determinations presented by Plaintiffs' claims here relate to *both* merits *and* damages.[37]   And Plaintiffs' remaining cases involved far more circumscribed individualized review than this case.[38]

Here, liability depends on whether State Farm's total claim payment to each insured was sufficient.  That requires individualized proofs from State Farm's *and* insureds' records.  As one court explained in another action for alleged claim underpayments, "for each class member, the issue is whether the total amount paid, not just a discrete…component of that payment, was sufficient to satisfy State Farm's contractual obligation…State Farm is entitled to show that its overall adjustment of each putative class member's claim" satisfied its obligation to pay "the

---

[36] The third labor depreciation action Plaintiffs cite, *Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179 (Ark. 2010), is unpersuasive because "Arkansas courts do not undertake a rigorous analysis of whether the class certification requirements are met" – federal courts, on the other hand, "*must* do so."  *Adams v. United Servs. Auto. Assoc.*, 2016 WL 1465433, at *6 (W.D. Ark. Apr. 14, 2016) (emphasis supplied).

[37] *See* Pl. Mem. 17-18, citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013) (predominance satisfied where allegedly defective products all contained essentially same defect); *In re Deepwater Horizon*, 739 F.3d 790, 816 (5th Cir. 2014) (predominance satisfied in "mass accident case[] … in which 'virtually every issue prior to damages is a common issue'"); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (predominance satisfied only "[i]f the issues of liability are genuinely common issues"); *Lindell v. Synthes USA*, 2014 WL 841738, at *13-14 (E.D. Cal. Mar. 4, 2014) (fraud claims were based on "misstatement[s] of the law" or "d[id] not entail individualized inquiries").

[38] *See In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657 (S.D. Fla. 2012) (predominance satisfied where liability for overdraft fees could be determined based on cursory review of defendant's own records).

reasonable and necessary costs to repair" the insured's property.  *Nguyen*, 2008 WL 4691685, at

*5.  Courts consistently have denied class certification where, as here, liability determinations

require individualized analysis of each class member's claim.  *See*, *e.g.*, *Mills v. Foremost Ins. Co.*,

269 F.R.D. 663, 676 (M.D. Fla. 2010) (predominance lacking where individualized inquiry was

needed to resolve insurer's liability on claims of breach for alleged practice of underpaying

claims); *Schumacher v. State Auto. Mut. Ins. Co.*, 2015 WL 421688, at *6 (S.D. Ohio Feb. 2, 2015)

(class certification denied where insurer's liability "will hinge on a case-by-case analysis of the

replacement costs … of every insureds' home, discernment of which will require a thorough

analysis"); *Monteleone v. Auto Club Grp. Memberselect Ins. Co.*, 2014 WL 1652219, at *4 (E.D.

Mich. Apr. 23, 2014) (no predominance where determining insurer's liability for denial of water

damage claims "will require individual investigation to determine if coverage is owing").[39]

### B.   Superiority Fails Given the Need for Extensive Individualized Fact-Finding for Every Putative Class Member's Claim.

Plaintiffs' inability to demonstrate that "common proofs" are available to identify class

members, to determine which have standing, to resolve the asserted class claims on the merits, *or*

to calculate class-wide damages also precludes a finding of superiority.  *See Mays*, 274 F.R.D. at

627-28 (predominance and superiority were lacking in asserted class action for property damage

arising out of ash spill; individualized proofs would be required to establish where coal ash was

present and any resulting impairment to the property owner's use and enjoyment).  Plaintiffs

contend that superiority is satisfied because individual insureds' claims likely are small in value,

and because many further are not likely to sue individually because State Farm supposedly

---

[39] *See also Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318, 329 (5th Cir. 2008) (reversing class certification where "myriad mini-trials cannot be avoided"); *Eversole v. EMC Mortg. Corp.*, 2007 WL 1558512, at *11 (E.D. Ky. May 29, 2007) (denying certification where "proof of liability…will require a series of mini-trials").

"concealed" its depreciation of labor costs when calculating ACV.  Pl. Mem. 20-21.  As to supposed "concealment," this Court already has ruled that Plaintiffs cannot state claims for such wrongdoing by State Farm.  *See supra* Arg. § II.  Beyond that, the problem with their action is that the asserted class includes insureds who *have no claims at all* due to State Farm's full payment for their losses, and weeding out those who may have standing from those who do not will require precisely the individualized inquiry that will defeat any supposed efficiency in affording this action class treatment.  *See supra* Arg. § III.

## V.  COMMONALITY, TYPICALITY, AND ADEQUACY ARE NOT SATISFIED.

### A.  Commonality Is Not Satisfied.

#### 1.  An Issue That Has Been Decided Cannot Support Commonality.

Plaintiffs base their commonality showing on the issue of "whether it is improper for State Farm to depreciate labor costs in calculating the ACV of structural damage claims."  Pl. Mem. 12.  Yet Plaintiffs *also* assert that the Court already has decided that issue.  *Id.* at 13.  That defeats commonality, which requires a common issue that, when resolved, "will advance the litigation."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1988).  Commonality is not shown if the primary issues in an action already have been decided – as Plaintiffs here contend – at the "time the district court t[akes] up the certification question" such that "each plaintiff's claim depend[s] upon facts and circumstance peculiar to that plaintiff."  *Id.* at 397-98.

If the labor depreciation issue already *is* decided here, as Plaintiffs contend, the remaining issues in this suit *all* require wholly individualized proofs.  *See supra* Arg. § III.  In that circumstance, commonality *and* superiority fail.  *Sprague*, 133 F.3d at 397-98; *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631-632 (6th Cir. 2011) (when the "district court rule[s] on the only issue that was truly 'common'" and only "questions that require individualized … assessment" remain, superiority is not satisfied).

-37-

**2.      If the Issue of Labor Depreciation is Reexamined, the Question Should Be Resolved in State Farm's Favor.**

State Farm acknowledges this Court's prior, interlocutory ruling that Kentucky would not allow depreciation of the labor component of replacement cost for ACV calculations.  Since that ruling, however, there have been significant developments in the law in Kentucky and elsewhere. Two state supreme courts have held that labor depreciation *is* permitted under the applicable state's law.[40]  Two federal courts have ruled similarly, applying the law of Oregon and Alabama.[41]  The Arkansas legislature has passed a law effectively overriding earlier precedent disapproving labor depreciation there.[42]  And for Kentucky, Judge Thapar has predicted that Kentucky *would* allow labor depreciation for ACV calculations in some circumstances:

> [L]abor is required to produce most goods – even tangible ones. In our car example, a designer must design the car, a factory must make the parts, workers must assemble the parts into a car, and a corporate executive must oversee its production. The value of all this labor is "baked in," as it were, to the value of the car that ultimately leaves the lot. And thus when the value of a tangible good depreciates, the value of the labor that went into producing that good depreciates – in some sense – as well.

*See Brown v. Travelers Cas. Ins. Co. of Am.*, 2016 WL 1644342, *3 (E.D. Ky. Apr. 25, 2016).

---

[40] *See Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 785 (Minn. 2016) (under state's broad evidence rule, "the trier of fact *may* consider embedded-labor-cost depreciation when such evidence logically tends to establish the actual cash value of a covered loss"); *Henn v. Am. Family Mut. Ins. Co.*, 295 Neb. 859, 875 (2017) ("an insured is properly indemnified" when labor and material costs are depreciated to calculate ACV).

[41] *See Matchniff v. Great N.W. Ins. Co.*, 2016 WL 7424261, at *7-8 (D. Or. Dec. 20, 2016) (depreciation of labor may be considered to calculate ACV where labor is "embedded" in the constructed property); *Ware v. Metro. Prop. & Cas. Ins. Co.*, 2016 WL 7209816, at *2-3 (M.D. Ala. Dec. 7, 2016) (under Alabama law, labor depreciation is allowed under a policy providing for payment of ACV with an allowance for physical depreciation).

[42] "An Act to Amend the Property and Casualty Law; to Clarity the Depreciation Applicable when Determining the Value of Damaged Property; and for Other Purposes," Act 279, Ark. § 23-88-106(a)(2) & (b)(1) (2017) (attached as Exhibit 29), abrogating by statute *Shelter Mutual Insurance Co. v. Goodner,* 477 S.W.3d 512 (Ark. 2015) and *Adams v. Cameron Mutual Insurance Co.,* 430 S.W.3d 675 (Ark. 2014).

State Farm respectfully submits that it is appropriate for this Court to reexamine its earlier ruling on the question of labor depreciation, given the conflict between this Court's ruling and the ruling in *Brown*, and will be moving separately on that issue.  State Farm should not face class-wide liability for the same conduct deemed lawful as to another insurer.  Further, as to Plaintiffs' instant Motion, this Court's adoption of the reasoning in *Brown* would add a host of additional, wholly individualized issues that the trier of fact would need to resolve for the asserted class claims here, including (i) identifying what labor items for each insured are depreciable, (ii) whether depreciation was applied to labor costs that were not depreciable, and (iii) whether replacement cost benefits subsequently were paid to address any improper labor depreciation.  *See* Ex. 25 at 26-27.  That further would preclude certification of Plaintiffs' suit for class treatment.[43]

### B.      Typicality Is Not Satisfied.

Plaintiffs' failure to demonstrate commonality is fatal as to typicality as well.  "The premise of the typicality requirement is that "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.  Where there are no common questions, typicality also fails because "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Id.*

State Farm has shown that proof of either Hicks' or Williams' individual claims would not serve to resolve any other insured's claim.  Each insured's claim instead depends on entirely different documentary and testimonial evidence regarding their specific properties, their individual decisions regarding repair, the costs they incurred for any repairs, and the payments each chose to

---

[43] *See* Order Granting Mot. to Strike Class Allegations, *Wilcox v. State Farm Fire & Cas. Co.*, No. 14-cv-02798-RHK-FLN, Dkt. 82 at 8 (D. Minn. Sept. 7, 2016) (no predominance where individualized inquiry would be needed to determine who was underpaid for ACV), adopted, Dkt. 87 at 1 (D. Minn. Nov. 1, 2016) (both attached as Ex. 26).

request from State Farm.  Those individual proofs are needed before any insured can show State Farm paid less than his or her actual cost of repair.  *See supra* Bkgd. § II.  Accordingly, typicality fails.

      **C.**    **Plaintiffs' Lack of Standing Renders Them Inadequate as Class Representatives.**

A plaintiff who lacks standing individually cannot adequately represent a proposed class. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured.").  Because State Farm paid Hicks and Williams all costs they incurred to repair or replace their respective properties (*see supra* Bkgd. § III.A-B), they suffered no injury, can show no breach, and lack standing.  This renders them inadequate to serve as class representatives as a matter of law.  *Lewis*, 518 U.S. at 357.

## CONCLUSION

For all the foregoing reasons, State Farm respectfully requests that this Court deny Plaintiffs' motion for class certification with prejudice.

Dated: March 23, 2017

Respectfully submitted,

/s/  *Heidi Dalenberg*

David Klapheke
BOEHL, STOPHER & GRAVES, LLP
400 West Market Street
Suite 2300
Louisville, KY 40202
(502) 589-5980
dklapheke@bsg-law.com

Joseph A. Cancila, Jr. (pro hac vice)
Heidi Dalenberg (pro hac vice)
Ryan Poscablo (pro hac vice)
Jacob L. Kahn (pro hac vice)
Tal C. Chaiken (pro hac vice)
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 W. Madison Street, Suite 2900

Chicago, IL  60602
(312 471-8700
jcancila@rshc-law.com
hdalenberg@rshc-law.com
rposcablo@rshc-law.com
jkahn@rshc-law.com
tchaiken@rshc-law.com

*Counsel for Defendant State Farm Fire and Casualty Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2017, I electronically served the foregoing document on

the following counsel of record by filing the same via the Court's CM/ECF system:

M. Austin Mehr
Philip G. Fairbanks
Erik D. Peterson
Bartley K. Hagerman
MEHR FAIRBANKS & PETERSON TRIAL LAWYERS, PLLC
201 W. Short St., Suite 800
Lexington, KY 40507

J. Morgan Smith
RICHARDSON & SMITH, PSC
62 W. Main St., P.O. Box 1040
Owingsville, KY 60360

Paula Richardson
RICHARDSON, BARBER & WILLIAMSON PSC
86 W. Main Street, P.O. Box 1169
Owingsville, KY 40360


/s/ *Kevin Reidy*
        Kevin Reidy