UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT ASHLAND
CIVIL ACTION NO. 14-CV-00053-HRW
*ELECTRONICALLY FILED*

SUSAN HICKS, and DON WILLIAMS,
individually and on behalf of all others
similarly situated                                                          PLAINTIFFS

v.      **REPLY IN SUPPORT OF PLAINTIFFS' AMENDED MOTION
        FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS
        REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

STATE FARM FIRE AND CASUALTY COMPANY                         DEFENDANT

# REDACTED

# TABLE OF CONTENTS

I.   ARGUMENT .................................................................................................1

  A.  State Farm's "less than ACV" arguments do not bar class certification. ...............1

      1.  An insured's repair or replacement cost has no bearing on the calculation of ACV. .........................................................................3

      2.  State Farm's policy language does not allow it to pay "less than ACV". ........5

      3.  State Farm's less than ACV argument is inconsistent with its own claim procedures and its Kentucky labor depreciation refund program. ....................6

      4.  State Farm's expert erroneously opines that State Farm's estimates are unreliable..............................................................................7

  B.  All proposed class members have standing. .........................................................10

  C.  All proposed class members' claims are timely. ...................................................12

  D.  The class is ascertainable. ....................................................................................14

  E.  Predominance and superiority are satisfied. ........................................................15

  F.  The common question of whether State Farm breached its contract satisfies commonality. .......................................................................................................18

  G.  Typicality and adequacy are satisfied. .................................................................20

II.   CONCLUSION............................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Aetna Ins. Co. v. Johnson*, 74 Ky. 587 (Ky. 1874) .............................................................2

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)....................................................................................2, 12

*Bailey v. State Farm Fire & Cas. Co.*,
    2015 U.S. Dist. LEXIS 37568, at *15 (E.D. Ky. Mar. 25, 2015) ..........................19

*Beattie v. CenturyTel., Inc.*, 511 F.3d 554 (6th Cir. 2007) ...................................20

*Boss v. Travelers Home & Marine Ins. Co.*,
    2016 U.S. Dist. LEXIS 101342, at *26-27 (W.D. Mo. July 25, 2016).................19

*Bowers v. Windstream Ky. E., LLC*,
    2012 U.S. Dist. LEXIS 7809 (W.D. Ky. Jan. 23, 2012)........................................19

*Brown v. State Auto*, 189 F. Supp. 2d 665 (W.D. Ky. 2001).............................................13

*Brown v. Travelers Cas. Ins. Co. of Am.*,
    2016 U.S. Dist. LEXIS 55037 (E.D. Ky. Apr. 25, 2016) .....................................19

*Dennington v. State Farm Fire & Cas. Co.*,
    No. 4:14-cv-4001-SOH, (W.D. Ark. Aug. 24, 2016) ..........................................8, 9

*Emberton v. GMRI, Inc.*, 299 S.W.3d 565 (Ky. 2009) ......................................................13

*Eversole v. EMC Mortg. Corp.*,
    2007 U.S. Dist. LEXIS 38892, at *42 (E.D. Ky. May 29, 2007) ..........................16

*Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179 (Ark. 2010).......................16

*Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318 (5th Cir. 2008)....................................16

*Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 2d 928 (N.D. Tex. 2001).......................................3

*Gilderman v. State Farm Ins. Co.*,
    437 Pa. Super. 217, 224-27, 649 A.2d 941 (Pa. Super. Ct. 1994) ..........................4

*Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453 (7th Cir. 2010) .............................11

*Harrington v. Amica Mut. Ins. Co.*,
    646 N.Y.S. 2d 221, 223, 223 A.D.2d 222 (N.Y. App. Div. 1996) .........................4

*Halliburton Co. v. Erica P. John Fund*, 134 S. Ct. 2398 (2014) ........................................9

*Holaway v. Protective Life Ins. Co.*,
    2007 U.S. Dist. LEXIS 74223, at *5 (M.D. Ga. Oct. 3, 2007) ..............................10

*Huggins v. Hanover Ins. Co.*, 423 So. 2d 147 (Ala. 1982) .................................................4

*Indigo LR LLC v. Advanced Ins. Brokerage of Am. Inc.*,
    717 F.3d 630 (8th Cir. 2013) ...............................................................................10

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ...............................................................................17

*Jenkins v. State Farm Fire and Cas. Co.*,
    No. 15 CH 8242, Hr'g Tr. at 10-11 (Cook County Cir. Ct. Ill. Feb. 4, 2016) .........3

*Johnson v. Midland Credit Mgmt. Inc.*,
    2012 U.S. Dist. LEXIS 170420, at *41 (N.D. Ohio Nov. 29, 2012) ....................19

*Kartman v. State Farm Mutual Auto. Ins. Co.*, 634 F.3d 833 (7th Cir. 2011) ..................10

*Kendrick v. Std. Fire Ins. Co.*,
    2010 U.S. Dist. LEXIS 135694, at *38-39 (E.D. Ky. Sep. 30, 2010) ....................1

*Labrier v. State Farm Fire & Cas. Co.*,
    315 F.R.D. 503 (W.D. Mo. 2016) ................................................................ *passim*

*Labrier v. State Farm Fire & Cas. Co.*,
    147 F. Supp. 3d 839 (W.D. Mo. 2015) ..................................................................7

*Lains v. Am. Family Mut. Ins. Co.*,
    2016 U.S. Dist. LEXIS 119879, at *7 (W.D. Wash. Feb. 9, 2016) ......................19

*Legacy Condos. Inc. v. Landmark Am. Ins. Co.*,
    2008 U.S. Dist. LEXIS 655, at *6-7 (S.D. Miss. Jan. 4, 2008) ..............................4

*Leyva v. Medline Indus*., 716 F.3d 510 (9th Cir. 2013) .....................................................17

*Matthews v. State Farm Fire & Cas. Co.*,
    2007 U.S. Dist. LEXIS 53471, at *6 (E.D. La. July 24, 2007)...............................5

*May v. Blackhawk Mining, LLC*,
    2017 U.S. Dist. LEXIS 50295, at *11-12 (E.D. Ky. Apr. 3, 2017) ................17, 20

*Martins v. 3PD Inc.*,
    2014 U.S. Dist. LEXIS 40638, at *39 (D. Mass. Mar. 27, 2014)........................18

*McCalla v. Royal Maccabees Life Ins.*, 14 Fed. App'x 840 (9th Cir. 2001) .....................6

*Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008)............................................3

*Mills v. Foremost Ins. Co.*, 269 F.R.D. 663 (M.D. Fla. 2010)...................................15, 16

*Monteleone v. Auto Club Grp. MemberSelect Ins. Co.*,
    2014 U.S. Dist. LEXIS 56233, at *12-13 (E.D. Mich. Apr. 23, 2014)................16

*Nguyen v. St. Paul Travelers Ins. Co.*,
    2008 U.S. Dist. LEXIS 88288 (E.D. La. Aug. 22, 2008) .....................................10

*Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136 (Ky. 1991)...........................................11

*Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*,
    129 F. App'x 955 (6th Cir. 2005) .........................................................................3

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*,
    654 F.3d 618 (6th Cir. 2011) ...............................................................................18

*Reliable Mech., Inc. v. Naylor Indus. Servs.*,
    125 S.W.3d 856 (Ky. Ct. App. 2003) ..................................................................11

*Riggins v.  Am. Family Mut. Ins. Co.*,
    106 F. Supp. 3d 1039 (W.D. Mo. 2015) ..............................................................19

*Rikos v. P&G*, 799 F.3d 497 (6th Cir. 2015) ..................................................................14

*Salesin v. State Farm Fire & Cas. Co.*,
    229 Mich. App. 346, 368, 581 N.W.2d 781 (Mich. App. 1998)............................4

*Santagelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ................................11

*Schafer v. State Farm Fire & Cas. Co.*,
    2009 U.S. Dist. LEXIS 71940, at *4 (E.D. La. Aug. 3, 2009) .............................15

*Schumacher v. State Auto. Mut. Ins. Co.*,
    2015 U.S. Dist. LEXIS 11857, at *9 (S.D. Ohio Feb. 2, 2015)...................... 15-16

*Sprague v. GMC*, 133 F.3d 388 (6th Cir. 1998) ..............................................................18

*St. Louis & O. R. Co. v. United States*, 279 U.S. 461 (1929) ..........................................12

*St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3rd Cir. 2009) .....10

*State Farm Fire & Cas. Co. v. Patrick*,
    647 So. 2d 983 (Fla. Dist. Ct. App. 1994) .......................................................... 4-5

*State Farm Fire & Cas. Co. v. Ponder*, 469 So. 2d 1262 (Ala. 1985)...........................4, 5

*Stiers v. State Farm Ins.*,
    2012 U.S. Dist. LEXIS 87591, at *11 (E.D. Tenn. June 25, 2012) .................4, 10

*Stryker Corp. v. XL Ins. Am.*,
    2007 U.S. Dist. LEXIS 1702, at *6 (W.D. Mich. Jan. 8, 2007) .............................6

*Trischler v. Allstate Ins. Co.*, 144 P.3d 519 (Ariz. App. Ct. 2006)....................................3

*United States v. City of New York*, 276 F.R.D. 22 (E.D.N.Y. 2011) .................................18

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*,
    2012 U.S. Dist. LEXIS 85663, at *7 (W.D. Mich. June 21, 2012) .....................19

*Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*,
    955 F.2d 831 (2d Cir. 1992)..................................................................................12

*Wiser Oil Co. v. Sizemore*,
    2004 Ky. App. Unpub. LEXIS 242, at *13 (Ct. App. May 28, 2004) .................12

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) .........................1, 14, 16

## **Statutes**

KRS 304.12-230(6)
    Kentucky's Unfair Claims Settlement Practices Act (UCSPA) ...................2, 3, 10

KRS 413.190(2) ..............................................................................................................13

KRS 413.090 to 413.160....................................................................................................13

## **Other Authorities**

COUCH ON INSURANCE 3D § 175.19 (June 2015) ........................................................9

State Farm's Memorandum in Opposition to Plaintiffs' Amended Motion for Class Certification ("Memo.") presents two interrelated primary arguments against class certification. Both fail. First, State Farm argues that its form insurance policy (the "Policy") allows it to pay less than the actual cash value ("ACV") of a loss.  As detailed below, the Kentucky Department of Insurance ("KYDOI") has found this approach to be a violation of Kentucky law.   Courts nationwide uniformly agree.

Second, State Farm argues that if the Court ignores the KYDOI and the courts that have rejected State Farm's policy interpretation and instead accepts State Farm's policy interpretation, a file-by-file review that is too onerous will be required.  *See, e.g.*, Ex. A at 37:13-24.  This Court has already rejected a similar argument, holding that "the need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained."  *Kendrick v. Std. Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 135694, at *38-39 (E.D. Ky. Sep. 30, 2010), *aff'd sub nom. Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012).  The proposed class should be certified here.

## I.      Argument

### A.  State Farm's "less than ACV" arguments do not bar class certification.

State Farm's central argument against certification arises from its incorrect interpretation of its policy that is unsupported by any case law from any jurisdiction.  *See* Memo. at 27-30.  By State Farm's telling, its policy allows it to pay *less* than ACV so long as the insured was able to complete a repair for the deficient amount.  By this (flawed) reasoning, claimants that recovered ACV but were somehow able to repair or replace their structure for less than that amount are uninjured.   Importantly, State Farm's own experts' opinions rely on this erroneous policy

interpretation, and are thus unhelpful.  *See, e.g.*, Ex. A at 37:13-24.  This incorrect interpretation also forms the basis for State Farm's arguments on standing, ascertainability, predominance, and adequacy.

State Farm's arguments as to Plaintiff Don Williams' own claim best exemplify the absurdity of State Farm's – again, unsupported – position.  Prior to the fire that destroyed it, Mr. Williams and his wife lived in a two story brick home overlooking Lake Cumberland.  Following the loss, State Farm calculated the RCV of their home to be $206,068.88, then, after deducting depreciation and the deductible, issued a $156,316 ACV payment.  DE 114-12 at 5; Memo. at 6. Instead of repairing or rebuilding his brick home, Mr. Williams purchased a manufactured home for $75,000, less than half of the amount of his ACV payment.   Under State Farm's policy interpretation, it would not be required to indemnify Mr. Williams for his two story brick house that was destroyed.  Instead, State Farm argues that it owes Mr. Williams only the amount he paid for his manufactured home – $75,000.00.  *See* Memo. at 40.

This approach is inconsistent with longstanding Kentucky law requiring indemnification. *See Aetna Ins. Co. v. Johnson*, 74 Ky. 587, 591 (Ky. 1874).  Perhaps more importantly, the KYDOI has already rejected State Farm's position here.   In a market conduct examination of Allstate Insurance Company, the KYDOI determined that it is a violation of Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230(6), (the "UCSPA") to make a less than ACV payment based on the actual cost of repair of the loss.  *See* Ex. B at 58.  While the Court is not required to delve into the merits of State Farm's defense, *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013), State Farm's position is contrary to law.

**1. An insured's repair or replacement cost has no bearing on the calculation of ACV.**

State Farm's "less than ACV" argument fails as a matter of law because "the determination of actual cash value is ***not*** based upon what the insured actually pays to repair or replace the damaged property," and regardless of whether repairs are completed, "the insured would still be entitled to what was contracted for in the insurance policy: the actual cash value of the loss." *Trischler v. Allstate Ins. Co.*, 144 P.3d 519, 529 (Ariz. App. Ct. 2006).  The KYDOI has clearly rejected State Farm's position, finding that it would be a violation of the UCSPA for an insurer to pay less than ACV when insureds self-repaired their damaged home.  Ex. B at 58.

In addition to the KYDOI, at least nine courts, including the Sixth and Eleventh Circuits, have held that an insured's right to recover the full ACV of her loss is unaffected by her later decision to undertake repairs or the cost of such repairs.  *See*

- *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F. App'x 955, 962 (6th Cir. 2005) (actual repair costs "do[] not affect [a plaintiff's] right to recover the actual cash value of [her] loss, as the actual cash value is not calculated based upon what the insured ultimately pays to repair [her] property"; holding that "even if [the plaintiff] chooses not to repair [her] property at all, [she] would still be entitled to what it bargained for: the actual cash value of its loss . . .");

- *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]he Millses contracted for the actual cash value of their loss and their recovery is not tied to actually making the repair or replacement, much less actually paying a contractor anything . . . making the actual repairs first is not required in order to be paid the actual cash value of the damaged property");

- *Jenkins v. State Farm Fire and Cas. Co.*, No. 15 CH 8242, Hr'g Tr. at 10-11 (Cook County Cir. Ct. Ill. Feb. 4, 2016), Ex. C at 11-12 ("Under the policy [the ACV] payment is made before any repair or replacement is completed, meaning that the ACV does not depend on the actual cost of repairs. Thus, the Court finds that Plaintiff need not allege facts about any eventual repair in order to state a claim for breach of this insurance contract");

- *Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 2d 928, 935 (N.D. Tex. 2001) ("What plaintiff actually spent to repair his property—indeed, whether he repaired the property at all—does not affect his right to recover actual cash value");

- *Salesin v. State Farm Fire & Cas. Co.*, 229 Mich. App. 346, 368, 581 N.W.2d 781, 791 (Mich. App. 1998) (requiring State Farm to pay full ACV to insured, including costs that Salesin "did not, when he repaired his home, actually incur");

- *Gilderman v. State Farm Ins. Co.*, 437 Pa. Super. 217, 224-27, 649 A.2d 941, 945-46 (Pa. Super. Ct. 1994) (finding, where insurer "agreed to pay to its insureds the 'actual cash value' of a covered loss," that insured was entitled to recover full ACV "whether or not repairs or replacement actually occur," and rejecting argument that "insured would receive a windfall if permitted to recover a repair or replacement cost which never may be incurred");

- *State Farm Fire & Cas. Co. v. Ponder*, 469 So. 2d 1262, 1266 (Ala. 1985) (Specifically rejecting State Farm's "less than ACV" argument under almost identical policy language and stating that "it is clear that the insured's right to claim actual cash value is unaffected by his choice to rebuild his house");[1]

- *Harrington v. Amica Mut. Ins. Co.*, 646 N.Y.S. 2d 221, 223, 223 A.D.2d 222, 226 (N.Y. App. Div. 1996) ("Plaintiff would have been entitled to recover the actual cash value from defendant even if a third party had completed the repairs at no cost to plaintiff.").

In contrast, State Farm cites no case or any other authority supporting its position that it can pay an insured less than ACV on an ACV claim for structural damage.  Instead, every case cited by State Farm involves a dispute over the separate issue of ***RCV*** coverage.  *See Stiers v. State Farm Ins.*, 2012 U.S. Dist. LEXIS 87591, at *11 (E.D. Tenn. June 25, 2012) ("actual repair costs are the controlling criteria for determining whether the insurer has satisfied its ***replacement cost*** payment obligations under the policy")[2]; *Legacy Condos. Inc. v. Landmark Am. Ins. Co.*, 2008 U.S. Dist. LEXIS 655, at *6-7 (S.D. Miss. Jan. 4, 2008) ("Under the ***replacement cost*** provision… repairs actually made render estimates for those same repairs irrelevant."); *State Farm Fire & Cas.*

---

[1]     State Farm cites to *Huggins v. Hanover Ins. Co.*, 423 So. 2d 147, 150 (Ala. 1982) in its brief attempting to strike Plaintiffs' expert.  DE 130-1 at 13 n. 5 and quotes language in a parenthetical that the Alabama Supreme Court later specifically rejected in *Ponder*. 469 So. 2d at 1266 ("The language in *Huggins* dealing with replacement cost was unnecessary to its holding."). *Ponder* further notes that the language from *Huggins* that State Farm quotes, if applied, would "make[] a mockery of the overall coverage afforded by the policy."  *Id*.  *Ponder* supports Plaintiffs' position here.

[2] Unless otherwise indicated, all emphasis is added.

4

*Co. v. Patrick*, 647 So. 2d 983, 983-84 (Fla. Dist. Ct. App. 1994) (reversing judgment for insured because insurer did not owe more than the actual repair cost under the policy's **RCV** provision, which "is not of value to the [insureds] until they have expended an amount greater than what they could recover under the basic policy coverage"); *Matthews v. State Farm Fire & Cas. Co.*, 2007 U.S. Dist. LEXIS 53471, at *6 (E.D. La. July 24, 2007) (denying summary judgment to insured due to existence of a genuine issue of material fact about amount that insureds spent to repair home and amount, if any, the insurer may owe under the policy's **RCV** provision).

If State Farm's obligation could be less than ACV, an insured that completes repairs for less than ACV would in theory be contractually required to return the difference to State Farm. Courts have recognized that such a result would "make [] a mockery of the overall coverage afforded by" indemnity policies. *Ponder*, 469 So. 2d at 1266.  State Farm certainly has not tried to recover from Mr. Williams the more than $80,000 that State Farm apparently views as excess under its "less than ACV" approach after Mr. Williams replaced his two-story brick lakefront home with a manufactured home.  It should not be permitted to do so now for purposes of fabricating a defense to certification.

### 2.  State Farm's policy language does not allow it to pay "less than ACV."

State Farm's "less than ACV" argument is based on the false premise that it does not have a contractual duty to pay the full ACV amount as of the date of the loss. The policy states, however: "***until actual repair or replacement is completed***, we will only pay ACV ***at the time of the loss***… not to exceed the cost to repair or replace the damaged part of the property." DE 114-1 at 36, A1(a)(2). This language shows that: (1) ACV calculations are made "at the time of the loss"; (2) ACV is calculated without regard to subsequent repairs because the ACV payment is made ***before***

"actual repair or replacement is completed"; and (3) the insured does not have to repair or replace her property to receive the ACV payment for her loss.

State Farm's policy also states, in the next section, that "when the repair or replacement is **actually** completed, we will pay **the covered additional amount** you actually and necessarily spend to repair or replace the damaged part of the property." *Id.* at A1(a)(2). This language establishes that amounts "actually and necessarily" spent relate solely to replacement cost coverage claims ("RCV"). Under the clear policy language, the amount to which an insured becomes entitled following replacement or repair can only be equal to or greater than the previously calculated ACV payment, but never less than ACV.

This interpretation reflects common sense. If the cost of repairs after a loss impacted ACV, then the ACV owed at the time of the loss could not be calculated with finality or certainty. Insureds would in theory have to hold back ACV funds to reimburse State Farm in case market conditions years after a loss made repairs more economical or the policyholder used cheap, unlicensed or substandard contractors.  Such subsequent events simply have no rational bearing on an insured's entitlement to ACV calculated as of the date of the loss.

> **3. State Farm's "less than ACV" argument is inconsistent with its own claim procedures and its Kentucky labor depreciation refund program.**

State Farm's claim procedures make clear that State Farm does not pay less than ACV:



[3]

---

[3]     An insurance company's claim handling practices are relevant in a breach of contract case. *E.g., McCalla v. Royal Maccabees Life Ins.*, 14 Fed. App'x 840, 845 (9th Cir. 2001) "evidence of [insurance company's] claim handling is germane to [plaintiff's] breach of contract claim"); *Stryker Corp. v. XL Ins. Am.*, 2007 U.S. Dist. LEXIS 1702, at *6 (W.D. Mich. Jan. 8, 2007)

Ex. D at 1.

The form communication State Farm provides to insureds further confirms that State Farm pays ACV without regard to subsequent events: Until completion of repair or replacement, "our payment(s) to you will be for the actual cash value of the damaged part of the property, which may include a deduction for depreciation."  DE 33-2 at 5

In *Labrier v. State Farm Fire & Cas. Co.,* 315 F.R.D. 503 (W.D. Mo. 2016) State Farm's adjusters also confirmed that State Farm ***never*** pays less than ACV. Daniel Gray, a State Farm property adjuster since 2005, who adjusted Labrier's claim, testified that ACV is the minimum payment made on a claim and that he never paid an insured less than ACV. Ex. E at 167:18-169:11. In another deposition, Renita Jackson, another long-time State Farm property adjuster, could not recall a single instance where she paid an insured less than ACV on a claim. Ex. F at 166:11-167:5.

Finally, State Farm's less than ACV argument is contradicted by its own labor depreciation program in Kentucky.  During State Farm's Kentucky labor depreciation refund program it



. *See* DE 79 at ¶6 ; DE 114-2 at 8; Memo. at 16.  According to State Farm's own documents, . Ex. G.

---

("Evidence of claims handling is relevant because prior instances when the contract language at issue was interpreted in a particular way is indicative of the intent of the parties.").

**4. State Farm's expert erroneously opines that State Farm's estimates are unreliable.**

Despite State Farm's ████████████████████████████████, State Farm now presents an expert to criticize State Farm's own estimates as unreasonable, excessive or subject to change over time. *See* DE 114-2 at 44:11-14; DE Memo. at 5, 19. State Farm's own reliance on Xactimate estimates to pay claims and for its Kentucky labor depreciation refund program undercuts Mr. Berryman's opinion. In addition, Mr. Berryman's almost identical opinions were rejected in both *Labrier* and *Dennington*.

To reach his opinions in *Labrier*, *Dennington*, and here, Mr. Berryman inspected the named plaintiffs' structures years after their respective losses.[4] *See* Memo. at 5. Once he inspected the structures, he attempted to opine that plaintiffs were overpaid through their ACV payments and in some cases were able to complete some repairs for less than State Farm's ACV payment. *Id.*

His opinions are unreliable for a number of reasons. First, crediting his opinion would require the Court to believe that State Farm has become the largest and most profitable insurer in the United States by ██████████████████████████████████████████ ████████████████████ *See* DE 114-2 at 44:11-14. Even Mr. Berryman's ████████████ ██████████████████████████████████████████ Ex. H at 17:19-25. While Mr. Berryman opines that Ms. Hicks was overpaid for certain of her repairs, this opinion ignores that she did not rebuild the same house that preexisted the fire omitted many features of the preexisting house. *Id.* at 46:10-48:18; Memo. at 4-5. Berryman's belated, apples to oranges comparisons are unhelpful.

---

[4]     Curiously, Mr. Berryman chose not to inspect Mr. Williams' replacement manufactured home.

Second, State Farm cannot simply disavow its own payments now that its labor depreciation practices have been determined to be unlawful. The estimates State Farm prepared and provided to its insureds during the class period are binding, were made based on inspections that occurred at or near the time of loss, and formed the basis for the ACV payments made to tens of thousands of Kentucky insureds during the class period. Indeed, "[w]hat constitutes actual cash value in a fire policy which limits the insurer's liability to the actual cash value of the property *at the time of the loss* or damage depends upon the nature of the property insured, its condition, and other circumstances existing *at the time of the loss*." COUCH ON INSURANCE 3D § 175.19 (June 2015). In contrast, Mr. Berryman's opinions are based on inspections that took place years after the subject loss involving properties that had been significantly modified since the loss.[5]

In addition, as the court observed in *Labrier*,



Ex. I at 28-29 (unredacted version of July 25, 2016 *Labrier* class certification order); *See* DE 79 at ¶6. The same holds true here. *See* DE 79 at ¶6. When calculating the amount of labor

---

[5]     The *Dennington* court observed that, it "would be hesitant to permit an adjuster to conduct new estimates on properties, years after the claims were made and paid, such that State Farm would then be permitted to argue that they routinely overpaid their claimants and are not liable for unlawful labor deprecation." DE 14-7 at 10-11. The court further noted that, "[h]owever, should Defendants prevail on this affirmative defense, the Court is unconvinced, nor has sufficient evidence been presented, that there is such a practice of overestimating claims such that a significant portion of the proposed class would be affected. *Id* (citing *Halliburton Co. v. Erica P. John Fund*, 134 S. Ct. 2398, 2412 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate.")).

depreciation it owed its insureds through its Kentucky labor depreciation refund program, it did not once inspect any properties for the purpose of determining amounts owed.

Finally, Mr. Berryman's opinion offered in support of State Farm's litigation position here is further undercut by State Farm's own claim handling practices.  If, as State Farm contends, it can violate Kentucky's UCSPA and pay "less than ACV" when an insured is able to repair or replace for less than ACV, then it would seek to recover the excess payments issued to its own insureds.  *See* Ex. B at 58.  But, that is not how State Farm conducts business.

### B.  All proposed class members have standing.

State Farm incorrectly contends that the small subset of class members who made a claim under the RCV provision of their policy, and who subsequently recovered all of the originally withheld labor depreciation, suffered no economic loss and lack Article III standing.  Memo. at 29-32.  These class members have standing because of their claim for prejudgment interest.

State Farm cites a handful of cases, but none suggest that standing cannot be grounded solely on a claim for prejudgment interest.  The only case State Farm cites that actually addresses interest claims holds simply that a claim for interest from "an indefinite 'prompt' refund date" fails.[6]  *See* Memo. at 30 (citing *Holaway v. Protective Life Ins. Co.*, 2007 U.S. Dist. LEXIS 74223, at *5 (M.D. Ga. Oct. 3, 2007)).  In contrast, here Plaintiffs seek pre-judgment interest from the date of actual payments – not an indefinite and perhaps indeterminable "prompt" date.  *Haloway* is thus unhelpful. Importantly, while State Farm has failed to cite any case holding that a dispute exclusively over interest lacks Article III standing, courts regularly recognize that interest-only

---

[6]     State Farm's other cases are unhelpful, as none address interest claims.  *See Stiers*, 2012 U.S. Dist. LEXIS 87591; *Nguyen v. St. Paul Travelers Ins. Co.*, 2008 U.S. Dist. LEXIS 88288 (E.D. La. Aug. 22, 2008); *Indigo LR LLC v. Advanced Ins. Brokerage of Am. Inc.*, 717 F.3d 630 (8th Cir. 2013); *Kartman v. State Farm Mutual Auto. Ins. Co.*, 634 F.3d 833, 890 (7th Cir. 2011); *St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3rd Cir. 2009).

claimants have Article III standing.  *See, e.g.*, *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (finding injury-in-fact and Article III standing because "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the value of money"); *Santagelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 697 (N.D. Ill. 2016) ("even if the $50.00 deposit were fully refundable, Santangelo still has standing based on the lost time-value of money").

State Farm then erroneously argues that to obtain prejudgment interest, damages must be liquidated.  Memo. at 31.  State Farm is incorrect.  In Kentucky, "[w]hen the damages are 'liquidated,' prejudgment interest follows as a matter of course."  *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991).  When damages are unliquidated, "interest 'may be allowed as justice requires.'"  *Id*.  Nevertheless, here plaintiffs seek prejudgment interest on liquidated amounts.  *Labrier v. State Farm Fire & Cas. Co.*, 147 F. Supp. 3d 839, 852 (W.D. Mo. 2015) ("the claim is liquidated, and is definite as to amount and time").  This is because, as here, "the plaintiff's damages are readily ascertainable by computation or a recognized standard" and "State Farm calculated [the amount] itself using its 'Xactware/Xactimate's estimating software.'"  *Id*.

"'Interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness . . . . The tendency of the courts is to charge and allow interest in accordance with the principles of equity, to accomplish justice in each particular case.'"  *Reliable Mech., Inc. v. Naylor Indus. Servs.*, 125 S.W.3d 856, 856 (Ky. Ct. App. 2003).  Here, Plaintiffs seek prejudgment interest for all claimants that received ACV payments where State Farm withheld labor depreciation.  *See* DE 114-12 at 10 n. 2.  This is to compensate the claimants for the time value of the money that State Farm unlawfully held and invested for its own benefit.  *See Nucor*, 812 S.W.2d at 143 ("'Interest is charged not only because of the value to the one who uses money, but also as compensation to the one who has been deprived of the use

of money.'").[7]  Prejudgment interest is recoverable here by all putative class members and can be calculated from date of ACV payment where labor depreciation was withheld until such depreciation was recovered (if at all) through subsequent payments.  All of this information can be found in State Farm's and Xactware's files and is based on State Farm's own calculations.  *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 540 (6th Cir. 2012).  Plaintiffs' prejudgment interest claims are liquidated, proper and represent injury-in-fact sufficient to provide Article III standing for all class members

### C.  All proposed class members' claims are timely.

While the Court is not required to delve into the merits of State Farm's time limitation defenses, *Amgen*, 133 S. Ct. at 1191, State Farm's position is contrary to law because State Farm's suit limitation clause is unenforceable here.  First, the Policy contains two separate and conflicting temporal limitations regarding coverage for structural claims.  On one hand, State attempts to require its insureds to make any claim for replacement cost benefits within ***two years*** after the date of loss.  DE 114-1 at 36, A1(a)(3).  This provision seems to take into account that – particularly for more significant losses – it may take more than a year for an insured to complete repairs and thus be entitled under the Policy to benefits beyond State Farm's calculation of the ACV of the

---

[7]      State Farm represents that ""it is an abuse of discretion to award prejudgment interest for such sums where a defendant has not acted in bad faith."  Memo. at 31.  But there is no bad faith standard for prejudgment interest and none of State Farm's cases suggest otherwise.  *Id.*; *Wiser Oil Co. v. Sizemore*, 2004 Ky. App. Unpub. LEXIS 242, at *13 (Ct. App. May 28, 2004) ("[e]quity and justice do not demand" that prejudgment interest be awarded over a land dispute when there was a misunderstanding as to who owned the land); *St. Louis & O. R. Co. v. United States*, 279 U.S. 461, 483 (1929) (declining to assess prejudgment interest in dispute over complex railroad rate-making dispute and reasonableness of rates charged because, unlike here, the defendant could not know "what, if anything it should pay" until judgment).  Indeed, State Farm's own case, *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 955 F.2d 831, 839 (2d Cir. 1992), awarded prejudgment interest to unliquidated damages where there were doubts "as to the exact extent of [defendant's] liability."

loss.  On the other hand, however, State Farm attempts to contractually limit Kentucky's statute of limitations to **one year** from the date of the loss.  *Id.* at 39.

Reading these two provisions together highlights the ambiguity of State Farm's suit limitation provisions.  Given the ambiguity in State Farm's attempt to contractually shorten the statute of limitation, the suit limitation clause is unenforceable and Kentucky's 15 year statute of limitations governs.  *See Brown v. State Auto*, 189 F. Supp. 2d 665, 668 (W.D. Ky. 2001).  As well as creating ambiguity, the conflicting dates – if enforced – would allow an insurer to deny any payment for replacement cost benefits claimed more than one year after the claim and leave its insured unable to file suit to challenge the denial.  That is not a reasonable result.

In addition, Plaintiffs have pled fraudulent concealment by State Farm of its depreciation of labor costs.  *See* DE 55 at ¶¶57-61.  KRS 413.190(2) provides, in relevant part, that

> when a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by … concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.

While State Farm argues in passing that the Court's dismissal of Plaintiffs' insurance bad faith claims precludes tolling based on fraudulent concealment, the Supreme Court has observed, "[f]or the purpose of the statute, 'though deception is involved, bad faith, evil design or an intent by the wrongdoer to deceive or mislead or defraud in the technical sense is not essential.'"  *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 573 (Ky. 2009).  In other words, since bad faith is not required to prove fraudulent concealment under Kentucky law, the dismissal of Plaintiffs' bad faith claims here has no bearing on the fraudulent concealment allegations.

13

### D.  The class is ascertainable.

Despite State Farm's own ability to apply objective standards – and utilize its own electronic records – ██████████████████████████████████████████ ██████████████████████████████ State Farm argues that the class is not ascertainable here. *Compare* Memo. at 32, *with* DE 79 at ¶6 (████████████████████████████ ██████████████████. Under *Young*, for a putative class to be ascertainable, "'the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.'" *Rikos v. P&G*, 799 F.3d 497, 525 (6th Cir. 2015) (quoting *Young*, 693 F.3d at 539).  Here, the class definition has objective standards: To be a Class member, one must have i) received an ACV payment from State Farm, ii) for loss or damage to a dwelling or other structure located in the Commonwealth of Kentucky, iii) occurring from February 28, 2004 through July 25, 2015, iv) where labor costs were depreciated.[8]  State Farm's "records contain all of the objective information necessary to identify class members…." Ex. I at 21-22.  In such circumstances, "courts routinely conclude class certification is appropriate, notwithstanding the company's objection that researching its own files is laborious or burdensome.  *Id*. at 22 (collecting cases); *Rikos*, 799 F.3d at 525; *Young*, 693 F.3d at 539.

Like its other certification defenses, State Farm's ascertainability arguments turn on its incorrect "less than ACV" policy interpretation as opposed to Plaintiffs' class definition.  Memo. at 33 ("individualized inquiry will be required to identify those individuals who were not paid an

---

[8]     Claimants who subsequently recovered some or all of the withheld depreciation as part of a later RCV payment (received after the initial ACV payment at time of loss), are also members of the Class because they – like those claimants who never recovered any of the withheld depreciation – are entitled to relief from State Farm in the form of pre-judgment interest to account for the time that State Farm improperly retained the withheld depreciation.

amount sufficient to cover their costs of repair").  For the reasons explained above, State Farm's "less than ACV" argument fails and thus serves as no barrier to ascertainability here.

### E.  Predominance and superiority are satisfied.

Like the other arguments based on its "less than ACV" interpretation, State Farm ignores Plaintiffs' claims and the objective standards needed both to identify class members and to calculate damages.[9]  Attempting to apply a separate (inapplicable) body of jurisprudence, State Farm tries to characterize this suit as a challenge to the ***reasonableness*** of State Farm's ACV payments.  Memo. at 35-36.  But there is no such challenge here.  Instead, here the predominate question is whether State Farm breached its policy by deducting labor depreciation from its ACV payments – not whether State Farm paid a reasonable amount on each claim.  As the court observed in *Labrier*, "many of the cases State Farm cites where courts found predominance lacking, involved damage claims based on a reasonableness or other subjective standard, in contrast to the objective standard at issue here." *Labrier*, 315 F.R.D. at 521; *see also* DE 114-7 at 9-10.

State Farm's reasonableness authority is equally inapposite here. *Schafer v. State Farm Fire & Cas. Co.* centered on whether the carrier had failed to pay "***reasonable***" amounts due. 2009 U.S. Dist. LEXIS 71940, at *4, 18 (E.D. La. Aug. 3, 2009). *Mills v. Foremost Ins. Co.,* 269 F.R.D. 663 (M.D. Fla. 2010), and *Nguyen*, 2008 U.S. Dist. LEXIS 88288, at *14, involved claims for non-payment of "general contractor's overhead and profit," which is only payable under the insurer's claim procedures when a general contractor is "***reasonably likely*** to be needed" in the repair or replacement of an insured's loss. *Mills,* 269 F.R.D. at 667.  Likewise, in *Schumacher v. State Auto.*

---

[9]     In its Memo., State Farm raises several challenges to Plaintiffs' expert, Saul Solomon's, opinions and methodology that are repeated in its Memorandum in Support of its Motion to Strike Saul Solomon.  Memo. at 30-33.  Plaintiffs address these arguments in its Opposition to State Farm's Motion to Strike Saul Solomon's Opinions and Testimony, which Plaintiffs incorporate herein.

*Mut. Ins. Co.*, "the issue [was] how to assess what constitutes a 'significant improvement'—and whether, on a property-by-property basis, it has been made. 2015 U.S. Dist. LEXIS 11857, at *9 (S.D. Ohio Feb. 2, 2015). As the court observed, the questions "is without any objective measurement." *Id.* Finally, *Monteleone v. Auto Club Grp. MemberSelect Ins. Co.* involved claims for denial of coverage for water damage and required a determination of the source of the water, which "may be unclear or in dispute" and may include "whether a blockage prevented water from leaving the residence, how weather conditions affected the water damage, the municipal system's historical issues, the amount of water in the basement and how quickly it accumulated, whether neighboring homes suffered similar damage, and other related evidence."[10]  2014 U.S. Dist. LEXIS 56233, at *12-13 (E.D. Mich. Apr. 23, 2014).

Unlike the cases cited by State Farm, no individualized, subjective determination of "reasonableness" is required to determine State Farm's liability on any claim. State Farm "adjusted the claims of the class members *in the same way* that it adjusted the Plaintiffs' claims, *i.e.*, by depreciating the cost of labor." *Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179, 184 (Ark. 2010). The class members' claims will rise or fall together, thus predominance is satisfied. *Young*, 693 F.3d at 544.

As noted by the Arkansas Supreme Court in *Farmers Union,* a refusal to adjudicate labor depreciation claims on a class-wide basis would result in the "unnecessary burden of filing

---

[10]    In *Eversole v. EMC Mortg. Corp.*, the court declined to certify a class consisting of members with various unique contracts with the bank. 2007 U.S. Dist. LEXIS 38892, at *42 (E.D. Ky. May 29, 2007). The court contrasted that situation – where certification was improper – with "a good example of an issue predominating" where the subject contract "was identical or substantially similar" and the uniform question was whether the contract was lawful – a scenario like here. *Id.* at *39. *Gene & Gene LLC v. BioPay LLC* is unhelpful here, as it addresses predominance in the context of disputes over whether certain parties properly consented to receive faxes. 541 F.3d 318, 329 (5th Cir. 2008).

16

thousands of individual administrative complaints … to resolve a single precise and common issue on contract interpretation." 370 S.W.3d at 188. While State Farm notes the differences between Arkansas and federal standards for class certification, the Arkansas Supreme Court's reasoning is consistent with federal principles. Memo. at 35 n. 36. "'[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification.'" *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013), cert. denied, 134 S. Ct. 1277 (2014). Where, as here, "a threshold issue is common to all class members, class litigation is greatly preferred." *Id.* "Further, class certification is the superior method of resolving this dispute [] because many of the claims are quite small, making individual lawsuits impracticable." *May v. Blackhawk Mining, LLC*, 2017 U.S. Dist. LEXIS 50295, at *11-12 (E.D. Ky. Apr. 3, 2017).

Moreover, Courts have certified classes in cases where the individual file review took substantially longer time than ███████████████████████████████. *Compare* Ex. G, *with, e.g.*, *Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013) ("The district court again abused its discretion when it based its manageability concerns on the need to individually calculate damages. . . . Through a query of the computerized timekeeping database, Medline's director of payroll operations calculated the amount of money plaintiff Leyva had lost due to Medline's rounding policy. ***The payroll director said the calculation took him 'probably an hour and a half,' and that he could repeat the process for the entire class***. The district court, or a special master appointed under Federal Rule of Civil Procedure 53, could use a similar method to calculate damages once the court adjudicates liability.").

At a minimum, this Court could bifurcate the determination of damages once it resolves at summary judgment whether State Farm's labor depreciation practice constituted a breach of contract. In other words, if the calculation of individualized damages becomes unwieldy because

of the size of the class, the answer is not to decline to certify the class but to appoint a special master to assist the Court and parties with such issues. "The appointment of a special master is often a preferred method for placing a dollar figure on individual damages where liability has already been determined on a class-wide basis." *Martins v. 3PD Inc.*, 2014 U.S. Dist. LEXIS 40638, at *39 (D. Mass. Mar. 27, 2014) (appointing special master to review defendant's records and calculate individual class members' damages).  The use of a "special master to make thousands of individualized determinations" does not mean the class is unmanageable. Rather, it means the Court is using "one of the tools available to the court to make class actions more manageable." *United States v. City of New York*, 276 F.R.D. 22, 50 (E.D.N.Y. 2011).  Thus, one approach may be to appoint a special master under Rule 53 to oversee the review of State Farm's records and assess individual class members' damages.

### F. The common question of whether State Farm breached its contract satisfies commonality.

State Farm misleadingly argues that an issue that has been decided cannot support commonality.  Memo. at 37.  In support, State Farm cites two cases where, prior to class certification, parties sought and the district court granted summary judgment on the question common to the putative class members.  *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618, 627 (6th Cir. 2011) (court first granted summary to plaintiff, then certified class); *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (court first granted partial summary judgment to defendant, then certified class).  Neither hold that an issue that has been decided fails to support commonality.  Instead, in both cases the court determined that the most significant bar to class certification was that – unlike State Farm's standard policy terms here – there was not a common contract among putative class members.  *Pipefitters*, 654 F.3d at 631; *Sprague*, 133 F.3d

18

at 398.  Summary judgment has not been granted here prior to certification, thus State Farm's cases are unhelpful.

Courts in the Sixth Circuit and elsewhere routinely grant summary judgment on a common question before certifying a class based, at least in part on that resolved common question.  *See, e.g.*, *Bowers v. Windstream Ky. E., LLC*, 2012 U.S. Dist. LEXIS 7809 (W.D. Ky. Jan. 23, 2012) (rejecting defendant's challenge to the court first awarding partial summary judgment on liability then certifying class); *Johnson v. Midland Credit Mgmt. Inc.*, 2012 U.S. Dist. LEXIS 170420, at *41 (N.D. Ohio Nov. 29, 2012) (first granting partial summary judgment to plaintiff, then certifying class).  This is done, in part, "in the interest of overall efficiency."  *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 2012 U.S. Dist. LEXIS 85663, at *7 (W.D. Mich. June 21, 2012).  In addition, State Farm's proposed rule would allow a class defendant to defeat class certification simply by moving to dismiss on any common questions alleged in the complaint. Neither case law nor logic support this result.[11]

---

[11]     State Farm again urges the Court to reexamine its determination in this case that State Farm's depreciation of labor costs is unlawful under its standard policy, citing to Judge Thapar's decision in *Brown v. Travelers Cas. Ins. Co. of Am.*, 2016 U.S. Dist. LEXIS 55037 (E.D. Ky. Apr. 25, 2016), a recent Arkansas statute, and other out-of-state authority.  Memo. at 38.  But, State Farm ignores that both *Brown* and the Arkansas statute **support** this Court's determination that State Farm's standard policy is ambiguous as to the depreciation of labor costs and that "Kentucky law dictates that the ambiguity be resolved in favor of the insured."  *Bailey v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. LEXIS 37568, at *15 (E.D. Ky. Mar. 25, 2015).  In *Brown*, Judge Thapar determined that the definition of depreciation "is at least ambiguous."  2016 U.S. Dist. LEXIS 55037, at *7 n. 2.  Similarly, the Arkansas statute now specifically defines depreciation to include labor costs, which State Farm's policy failed to do here.  DE 129-30 at 2-3.  Finally, State Farm's citation to authority interpreting ACV under other states' laws is made even more unhelpful by State Farm's omission of out-of-state cases holding that depreciation of labor costs is improper.  *See Riggins v. Am. Family Mut. Ins. Co.*, 106 F. Supp. 3d 1039, 1039 (W.D. Mo. 2015); *Labrier v. State Farm Fire & Casualty Co.*, 147 F. Supp. 3d 839 (W.D. Mo. 2015); *Lains v. Am. Family Mut. Ins. Co.*, 2016 U.S. Dist. LEXIS 119879, at *7 (W.D. Wash. Feb. 9, 2016); *Boss v. Travelers Home & Marine Ins. Co.*, 2016 U.S. Dist. LEXIS 101342, at *26-27 (W.D. Mo. July 25, 2016).

### G.  Typicality and adequacy are satisfied.

State Farm's typicality arguments ignore the law and are derivative its erroneous commonality position.  *See* Memo. at 39.  As this Court recently observed, "[a] claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *May*, 2017 U.S. Dist. LEXIS 50295, at *8 (quoting *Beattie v. CenturyTel., Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)) (certifying class).  Moreover, typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the Defendants' liability, not with respect to particularized defenses it might have against certain class members." *Id*.  Since the claims asserted herein arise from State Farm's uniform practice of depreciating labor costs when calculating ACV, typicality is satisfied here.

Finally, State Farm argues in passing that Ms. Hicks and Mr. Williams do not have standing and are thus inadequate class representatives.  This standing argument is based solely on State Farm's "less than ACV" and should be rejected for the reasons set forth in §§ I.A-B, *supra*.

### II.    Conclusion.

The Court: i) certify the Class; ii) appoint Mrs. Hicks and Mr. Williams as representatives of the Class; and iii) appoint Mehr, Fairbanks & Peterson Trial Lawyers, PLLC, Richardson & Smith, PSC, and Richardson, Barber & Williamson, PSC as counsel for the Class.

Respectfully submitted,

*/s/ Erik D. Peterson*
M. AUSTIN MEHR
PHILIP G. FAIRBANKS
ERIK D. PETERSON
BARTLEY K. HAGERMAN
**Mehr Fairbanks & Peterson**
 **Trial Lawyers, PLLC**

201 West Short Street, Suite 800
Lexington, KY 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email:  amehr@austinmehr.com
Email:  pgf@austinmehr.com
Email:  edp@austinmehr.com
Email:  bkh@austinmehr.com

and

J. MORGAN SMITH
**Richardson & Smith, PSC**
62 West Main Street – Post Office Box 1040
Owingsville, KY 40360
Telephone:  606-674-8111
Facsimile:  606-674-6893

and

PAULA RICHARDSON
**Richardson, Barber & Williamson, PSC**
86 West Main Street
P.O. Box 1169
Owingsville, KY 40360
Telephone:  606-674-6337
Facsimile:  606-674-6090

*Counsel for Plaintiffs and
the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following registered participants:

- **Joseph A. Cancila , Jr**
  jcancila@rshc-law.com,lkelly@schiffhardin.com
- **Tal C. Chaiken**
  tchaiken@rshc-law.com,edocket@schiffhardin.com
- **Heidi Dalenberg**
  hdalenberg@schiffhardin.com,zhill@schiffhardin.com
- **Philip G. Fairbanks**
  pgf@austinmehr.com,amlopsc@yahoo.com,shall@austinmehr.com
- **Bartley K. Hagerman**
  bkh@austinmehr.com,amlopsc@yahoo.com,shall@austinmehr.com
- **Harnaik (Nick) Singh Kahlon**
  nkahlon@schiffhardin.com,sstojanovic@schiffhardin.com
- **David T. Klapheke**
  dklapheke@bsg-law.com,mklein@bsg-law.com
- **M. Austin Mehr**
  amehr@austinmehr.com,amlopsc@yahoo.com,pgf@austinmehr.com,
  shall@austinmehr.com
- **Erik David Peterson**
  edp@austinmehr.com,amlopsc@yahoo.com,shall@austinmehr.com
- **Paula Richardson**
  paula_richardson04@yahoo.com
- **Jessica Morgan Smith**
  j.morgan.smith11@gmail.com

/s/ *Erik D. Peterson*
ERIK D. PETERSON

22