Eastern District of Kentucky
FILED
FEB 21 2019
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 14-CV-00053-HRW

SUSAN HICKS and DON WILLIAMS,
individually and on behalf of all others
similarly situated                                                                                  PLAINTIFFS

v.        **MEMORANDUM OPINION AND ORDER**

STATE FARM FIRE AND CASUALTY COMPANY                                    DEFENDANT

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

This matter is before the Court upon Plaintiffs Susan Hicks' ("Hicks") and Don Williams' ("Williams") (collectively, "Plaintiffs") Amended Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (the "Class Certification Motion"). [Docket No. 114]. The matter has been fully briefed by the parties [Docket Nos. 129 and 140] and the undersigned heard the arguments of counsel on two occasions, on September 6, 2017 [Docket No. 161] and December 27, 2018 [Docket No. 186]. For the reasons set forth herein, the Court finds class certification to be appropriate.

**I.**

Plaintiffs filed this civil action to challenge State Farm Fire and Casualty Company's ("State Farm") method of calculation of the actual cash value ("ACV") of structural losses under its insurance policies issued in Kentucky. Specifically, Plaintiffs allege State Farm improperly depreciated labor costs when calculating ACV payments, which resulted in breach of their respective insurance policies (Count I). Plaintiffs further alleged claims for unjust enrichment (Count II), statutory bad faith in violation of KRS 304.12-235 (Count III), and violation of KRS

367.170, the Kentucky Consumer Protection Act (Count IV). State Farm sought dismissal of Plaintiffs' Complaint.

By Order dated March 25, 2015, the undersigned sustained State Farm's motion as to all claims except the claim for breach of contract. [Docket No. 42]. On the question of a breach, this Court stated that "under fundamental tenets of Kentucky law, it would appear that the depreciation of labor in calculating ACV is improper." [Docket No. 42 at 10].

The case then proceeded on the question of class certification. Plaintiffs seek certification of a statewide class of persons with breach of contract claims against State Farm for withholding labor depreciation from ACV payments on structural damage claims. Plaintiffs seek recovery of unrecovered labor depreciation withheld by State Farm and prejudgment interest for amounts withheld.

On September 6, 2017, the undersigned convened a hearing on Plaintiffs' Class Certification Motion. During the hearing, it became apparent that an interlocutory appeal of the Court's March 25, 2015 Order was necessary as to the issue of depreciation of labor costs. Subsequently, on October 17, 2017, this Court sustained State Farm's request for Section 1292(b) certification of the March 25, 2015 Order and stayed the action pending a resolution from the Sixth Circuit.

The Sixth Circuit accepted State Farm's petition for interlocutory appeal. On October 15, 2018, the Sixth Circuit affirmed this Court's March 25, 2015 Order, "hold[ing] that State Farm miscalculated [ACV] when it depreciated the cost of labor and materials rather than simply materials." *Hicks v. State Farm Fire & Cas. Co.*, 2018 U.S. App. LEXIS 28894, at *1 (6th Cir. Oct. 15, 2018).

Following the Sixth Circuit's opinion and mandate, the undersigned, again, heard arguments of counsel on the issue of class certification.

Plaintiffs request certification of the following class of individuals seeking monetary damages from State Farm:

> All persons and entities that received "actual cash value" payments, directly or indirectly, from State Farm Fire and Casualty Company ("State Farm") for loss or damage to a dwelling or other structure located in the Commonwealth of Kentucky, such payments arising from events that occurred from February 28, 2004 through July 25, 2015, where the cost of labor was depreciated. Excluded from the class are: (1) all persons and entities that received payment from State Farm in the full amount of insurance shown on the declarations page; (2) State Farm and its affiliates, officers, and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiffs' counsel.

While Plaintiffs propose the above class definition with a class period extending more than ten years, for the reasons discussed below, the Court will modify the class definition so that the class period includes only those claims arising from events that occurred from February 28, 2013 through July 25, 2015.

## II.

"A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014). "Class certification is appropriate if the court finds, after conducting a 'rigorous analysis,' that the requirements of Rule 23 have been met." *Id.* at 851 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012). To be certified under Rule 23, a putative class must satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23. In addition, a putative class must satisfy the requirements of one of the three provisions of Rule 23(b). *Id.* Here,

3

Plaintiffs seek certification of the Class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* "These are known as the 'predominance' and 'superiority' requirements." *Wilson v. Anthem Health Plans of Ky., Inc.*, 2017 U.S. Dist. LEXIS 572, at *39 (W.D. Ky. Jan. 3, 2017).

In addition to the express requirements of Rule 23, this Circuit requires that a putative class be "sufficiently ascertainable." *Rikos v. P&G*, 799 F.3d 497, 525 (6th Cir. 2015), *cert. denied*, *P&G v. Rikos*, 136 S. Ct. 1493 (2016). "In our circuit, the ascertainability inquiry is guided by *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir. 2012)." *Id.* Under *Young*, for a putative class to be ascertainable, "'the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.'" *Id.* (quoting *Young*, 693 F.3d at 539).

Courts should refrain from "engag[ing] in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). However, the Rule 23 analysis often "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351. "'Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Rikos*, 799 F.3d at 505 (quoting *Amgen*, 133 S. Ct. at 1194-95).

### III.

**A. Rule 23(a)**

**1. Numerosity**

4

In order to satisfy Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1). Although "no strict numerical test exists to define numerosity under Rule 23(a)(1), substantial numbers of affected consumers are sufficient to satisfy this requirement." *In re Whirlpool Corp.*, 722 F.3d at 852. In addition, "impracticability of joinder must be positively shown,' and 'mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005).

Numerosity is satisfied here. For example, State Farm's own documentation of its Kentucky refund program identifies 1,854 Kentucky policyholders with claims during just four months of the more than two-year class period who received labor depreciation refund payments. [Docket No. 114-10]. All of these policyholders are members of Plaintiffs' proposed class. Moreover, State Farm's counsel conceded during the December 27, 2018 hearing that from February 2013 through July 25, 2015 approximately 11,800 Kentucky structural claims had depreciated labor costs withheld from the respective ACV payments. These numbers easily satisfy the numerosity requirement here.

### 2. Commonality

To establish "commonality, the plaintiffs' 'claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Young*, 693 F.3d at 542 (quoting *Dukes*, 564 U.S. at 350). As the Sixth Circuit has explained, "[i]n other words, named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos*, 799 F.3d at 505.

5

Moreover, "there need be only one common question to certify a class." *In re Whirlpool Corp.*, 722 F.3d at 853; *see also Dukes*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) "'[e]ven a single [common] question'" will do.").

Here, "Plaintiffs have identified a common question" – whether it is improper for State Farm to depreciate labor costs in calculating the ACV of structural damage claims in Kentucky – "that will yield a common answer for the entire class and that, if true, will make [State Farm] liable to the entire class." *Rikos*, 799 F.3d at 506.

In addition, all class members' claims arise from State Farm's common practice of depreciating labor costs in the calculation of ACV payments to Kentucky insureds. State Farm has admitted that its common practice until July 25, 2015 was to withhold labor depreciation from ACV payments to its insureds. [Docket No. 1 at 8] ("State Farm Fire generally has applied depreciation in its repair estimate, when appropriate, to all elements of the published unit cost, including embedded labor components thereof."); [Docket No. 79 at 2] ("In or about July 25, 2015, State Farm took steps to change the settings for its estimating software, called Xactimate, so that depreciation would no longer be applied to non-material components of repair prices when calculating the 'actual cash value' of a loss in an Xactimate estimate."); [Docket No. 114-2 at 53:8-9] ("the change was made to Xactimate application in July of 2015"). Moreover, through the Xactimate estimating software program, State Farm was able to calculate labor depreciation in a common, automated manner. [Docket No. 114-2 at 17:20-23] ("it's our only estimating software that we use").

This common question, posed in the context of State Farm's uniform claim handling practices, "will yield a common answer for the entire class that goes to the heart of whether

6

[State Farm] will be found liable under the relevant [] laws. That is all *Dukes* requires." *Rikos*, 799 F.3d at 508-09.

Finally, without deciding the merits of Plaintiffs' arguments seeking to avoid State Farm's one-year contractual suit limitations clause for certain proposed class members, the Court finds that those arguments, even if successful, might result in a class that includes members who do not satisfy the commonality requirement. This is because the potential class members who must rely on exceptions to the suit limitations clause may have to rely on proof that is not common to other class members, thus defeating commonality. The class period must thus be limited in time to exclude claims for losses that occurred more than one year prior to the February 28, 2014 filing of Plaintiffs' Complaint. [Docket No. 1 at 2].

For this reason, the Court modifies the class definition as follows:

> All persons and entities that were insured under the same type of homeowners policy form issued to Plaintiffs and who received "actual cash value" payments, directly or indirectly, from State Farm Fire and Casualty Company ("State Farm") for loss or damage to a dwelling or other structure located in the Commonwealth of Kentucky, such payments arising from events that occurred from February 28, 2013 through July 25, 2015, where the cost of labor was depreciated. Excluded from the Class are: (1) all persons and entities that received payment from State Farm in the full amount of insurance shown on the declarations page; (2) State Farm and its affiliates, officers, and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiffs' counsel.

*See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (district courts have broad discretion to modify class definitions).

With this modification, commonality is satisfied.

### 3. Typicality

Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "As the Supreme Court made clear in *Dukes*, '[t]he commonality and typicality requirements of Rule 23(a) tend to merge.' *Rikos*, 799

7

F.3d at 509 (quoting *Dukes*, 564 U.S. at 349 n.5). Thus, "many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. § 1764 (3d ed. 2005)).

To satisfy typicality, the "class representatives' interests must be aligned with those of the putative class and the pursuit of their claims must also advance the interest of the class." *Kendrick v. Std. Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 135694, at *5 (E.D. Ky. Sep. 30, 2010). Importantly, "the class representatives' claims need not always involve the same facts or law." *Id.* at *56-57. However, "there must be a common element or fact or law." *Id.* at *57.

Plaintiffs' claims and the class's claims all arise from State Farm's course of conduct of using Xactimate to depreciate labor costs when calculating ACV. Like all other members of the class, Plaintiffs had labor costs depreciated and deducted from ACV payments they received for structural damage claims. Additionally, Plaintiffs' claims are based on the same legal theories as the class's claims. Plaintiffs contend that they and every other class member are entitled to damages which are comprised of unrecovered labor depreciation and prejudgment interest. "Because Plaintiffs allege both a single practice or course of conduct on the part of [] Defendant [] that gives rise to the claims of each class member and a single theory of liability," typicality is satisfied. *Young*, 693 F.3d at 543.

### 4. Adequacy

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately represent the interests of the class." A "'class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Young*, 693 F.3d

at 543 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997)). The Sixth Circuit "looks to two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Id.* at 543 (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). In addition, courts in the Sixth Circuit "'review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation.'" *Id.* (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)).

Here, regarding the first criterion, Ms. Hicks' and Mr. Williams' interests are fully aligned with those of the class, as they are both part of the class and their claims arise out of the same common course of conduct and are based upon the same legal theories as class members' claims. As to the "second criterion, [Plaintiffs have] demonstrated, through [their] diligent 'prosecution of the litigation to date,' that [they] 'will continue to vigorously prosecute the claims of the class as a whole.'" *Wilson*, 2017 U.S. Dist. LEXIS 572, at *33-34 (quoting *Young*, 693 F.3d at 543). Finally, Plaintiffs have retained highly-qualified counsel, who have vigorously prosecuted the interests of the Class and will continue to do so. *See Wilson*, 2017 U.S. Dist. LEXIS 572, at *33-34.

### B. Rule 23(b)(3)

#### 1. Predominance

"'To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.'" *Young*, 693 F.3d at 544 (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011)). Courts in jurisdictions where labor

9

depreciation has been found to be unlawful have uniformly found that common issues predominate in cases challenging insurers' deprecation of labor costs. *See Stuart v. State Farm Fire & Cas. Co.*, __ F.3d__, 2018 U.S. App. LEXIS 34356, at *10 (8th Cir. Dec. 6, 2018) (petition for *en banc* review pending); [Docket No. 114-7 at 8-14] (same); [Docket No. 114-9] (same); *Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179, 187 (Ark. 2010) ("[t]he requirement that the common issue[s] predominate is [] satisfied" because "whether Appellant was able to depreciate labor pursuant to the contractual terms of its policies would be the same and require the same proof").

Where, as here, Plaintiffs challenge an insurer's standard process, "this is a predominate issue central to each of Plaintiffs' claims and subject to generalized proof." *Young*, 693 F.3d at 544; *see also In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 656 (S.D. Fla. 2012) ("where corporate policies 'constitute the very heart of the plaintiffs' . . . claims,' as they do here, common issues will predominate because those policies 'would necessarily have to be re-proven by every plaintiff'") (alterations in original); 1 McLaughlin on Class Actions § 5:56 (12th ed., updated Dec. 2015) ("Breach of contract claims arising out of a standardized, form contract ordinarily are suitable for class certification unless numerous inquiries are required to determine whether a breach of the contract occurred as to each class member.").

As the Sixth Circuit has recognized, "'when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate.'" *In re Whirlpool*, 722 F.3d at 850 (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1437 (2013) (Ginsberg and Breyer, JJ, joined by Sotomayor and Kagan, JJ, dissenting)). In addition, "[b]ecause '[r]ecognition that individual damages calculations do not preclude class certification under Rule

10

23(b)(3) is well-nigh universal,' in 'the mine run of cases, it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members.'" *Id.* Indeed, "courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations.'" Wm. Rubenstein, Newberg on Class Actions, § 4:54 (Winter 2013 Supp.) (citing *Comcast*, 133 S. Ct. 1426 (2013) (Ginsberg and Breyer, JJ., joined by Sotomayor and Kagan, JJ, dissenting)); *see also Stuart*, 2018 U.S. App. LEXIS 34356, at *10 ("The potential need for individualized damages inquiries is not sufficient to overcome the district court's findings of predominance and superiority."); *In re Deepwater Horizon*, 739 F. 3d 790, 815 (5th Cir. 2014) ("wide disparity among class members as to the amount of damages does not preclude class certification and courts, therefore, have certified classes even in light of the need for individualized calculations of damages"); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (predominance satisfied in breach of warranty case despite individualized damages where there was a "single, central, common issue of liability").

The Court must "ensure at the class-certification stage that 'any model supporting a plaintiff's damages case [is] consistent with its liability case,' i.e., that the model 'measure[s] only those damages attributable to that theory' of liability." *Rikos*, 799 F.3d at 523 (quoting *Comcast*, 133 S. Ct. at 1433). That is the case here.

Plaintiffs' expert proposes to measure damages in a manner that both is "'consistent with [the] liability case'" and "'measure[s] only those damages attributable to that theory' of liability." *Rikos*, 799 F.3d at 523 (quoting *Comcast*, 133 S. Ct. at 1433). Plaintiffs allege that State Farm's improper depreciation of labor costs resulted in a breach of its insurance policies,

11

and that State Farm should not have withheld labor depreciation when it made ACV payments to class members. Plaintiffs also allege that the class members are owed prejudgment interest representing the time-value of money for the labor amounts improperly withheld. That is precisely the harm quantified by Plaintiffs' damages model, which calculates damages pursuant to the following formula:

**DAMAGES = (WITHHELD LABOR DEPRECIATION AMOUNT NOT RESULTING IN TOTAL CLAIM EXCEEDING POLICY LIMITS - RECOVERED LABOR DEPRECIATION) + PREJUDGMENT INTEREST**

[Docket No. 114-3 at ¶¶ 5, 16-22]. Thus, Plaintiffs have satisfied the *Comcast* and *Rikos* requirement that Plaintiffs' damages approach track the theory of liability.

Predominance is established here.

### 2. Superiority is established.

As the Sixth Circuit has explained, "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" *Young*, 693 F.3d at 545 (quoting *Amchem*, 521 U.S. at 617). Where, as here, "'it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Id.* (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).

As in *Young*, here damages "are relatively small for [each of the] potential class member[s]." *Id.* Indeed, the spreadsheet produced by State Farm showing the supplemental labor depreciation payments made as part of its Kentucky labor depreciation refund program demonstrates that the bulk of its policyholders were paid less than $1,000.00, with a significant portion paid less than the filing fee for initiating an action in state court. [Docket No. 114-10];

12

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs).

Moreover, "few policyholders are likely to be aware of" State Farm's challenged practice here. *Young*, 693 F.3d at 545. "Given the unlikelihood that many injured policyholders will discover, let alone attempt to vindicate, their injury individually" in Kentucky courts, a class action is the superior method to adjudicate this case fairly and efficiently. *Id.*; *see also In re Whirlpool*, 722 F.3d at 861 ("Use of the class method is warranted particularly because class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery.").

In addition, "'cases alleging a single course of wrongful conduct are particularly well-suited to class certification.'" *Id.* (quoting *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)). Where, as here, "a threshold issue is common to all class members, class litigation is greatly preferred." *Id.*; *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 550 (6th Cir. 2006) ("Permitting individual owners and lessees of 1999 or 2000 Villagers to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues of contract interpretation that apply equally to the whole class."). Accordingly, a class action is the superior method for adjudicating the class's claims.

### C. Standing

Like in *Stuart*, here "State Farm argues that class certification is inappropriate because certain plaintiffs cannot demonstrate the injury-in-fact element of standing." *Stuart*, 2018 U.S. App. LEXIS 34356 at *11-12. As discussed above, "[t]his argument again misconstrues the basic theory of liability at issue in this case." *Rikos*, 799 F.3d at 524. "State Farm argues that

13

plaintiffs who completed their repairs at or below the cost of the ACV payment, or who ultimately received RCV payments, have suffered no injury and accordingly lack standing." *Stuart*, 2018 U.S. App. LEXIS 34356 at *12. While "couched as disputes about standing, State Farm's arguments really go to the merits of plaintiffs' claims." *Id.* Plaintiffs' theory is that "all individuals who received an improperly-depreciated ACV payment suffered a legal injury—breach of contract—regardless of whether the ACV payment was more than, less than, or exactly the same as the ultimate cost of repairing or replacing their property." *Id.* Moreover, Plaintiffs' damages theory and model seek damages for all class members, whether or not they ultimately recovered all of labor costs depreciated by State Farm. Plaintiffs seek both to recover unrecovered withheld labor depreciation and prejudgment interest for the time-value of labor depreciation withheld by State Farm.

### D. Membership in the Class is ascertainable.

Under *Young*, for a putative class to be ascertainable, "'the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.'" *Rikos*, 799 F.3d at 525 (quoting *Young*, 693 F.3d at 539). *Young* is instructive. In *Young*, "the named plaintiffs sued their respective insurance companies, alleging 'that their insurer charged them a local government tax on their premiums when either the tax was not owed, or the tax amount owed was less than the insurer billed.'" *Rikos*, 799 F.3d at 525 (quoting *Young*, 693 F.3d at 535). This Court certified a class of "'[a]ll persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by [Defendant insurer] . . . and who were charged local government taxes on their payment of premiums which were either not owed or were at rates higher than permitted.'" *Young*, 693 F.3d at 536 (second alteration in original). The insurer defendants argued that this definition was "not

14

administratively feasible" because it was not "sufficiently definite so that it [would be] administratively feasible for the court to determine whether a particular individual is a member." *Id.* at 538.

The Sixth Circuit rejected this argument, noting that "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Id.* The court determined that "plaintiffs had presented such a class, because class membership could be determined by reviewing factors such as 'the location of the insured risk/property' and 'the local tax charged and collected from the policyholder.'" *Rikos*, 799 F.3d at 525 (quoting *Young*, 693 F.3d at 539). The court also "considered—and rejected—the defendants' claim 'that the class properly could [not] be certified without . . . 100% accuracy.'" *Id.* "Instead, [the court] agreed with the district court's conclusion that 'the subclasses can be discerned with reasonable accuracy using Defendants' electronic records and available geocoding software, though the process may require additional, even ***substantial***, review of files.'" *Id.* (emphasis added in *Rikos*.).

The Sixth Circuit found "[e]qually—if not more—persuasive [] th[is] [] court's practical rationale: '[T]he need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained.'" *Young*, 693 F.3d at 540 (quoting *Kendrick v. Std. Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 135694, at *38-39 (E.D. Ky. Sep. 30, 2010), *aff'd sub nom. Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)). Importantly, the Sixth Circuit explained that "[i]t is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow

that same systemic failure to defeat class certification would undermine the very purpose of class action remedies." *Young*, 693 F.3d at 540; *see also McKeage v. TMBC*, 847 F.3d 992, 997, 1000 (8th Cir. Feb. 13, 2017) (ascertainability requirement satisfied where manual review of individual files identified approximately 100,000 class members). The Sixth Circuit also observed that administrative feasibility was supported by the fact that the defendant insurers' records "are in a form compatible with [analysis] software," which "would be used to *assist* in identifying potential class members and would be used in conjunction with manual review." *Young*, 693 F.3d at 540 (emphasis in original).

Just as in *Rikos*, "[t]he same reasoning applies to the instant case." *Rikos*, 799 F.3d at 525. Here, "[t]he proposed class is defined by objective criteria:" To be a class member, one must be insured under the same State Farm homeowners policy form as Plaintiffs and have i) received an ACV payment from State Farm, ii) for loss or damage to a dwelling or other structure located in the Commonwealth of Kentucky, iii) occurring from February 28, 2013 through July 25, 2015, iv) where labor costs were depreciated. Plaintiffs have also provided additional objective criteria to limit class membership, excluding: i) persons who received payment for the full amount of coverage listed on the declarations page; ii) State Farm and its affiliates, officers, and directors; iii) members of the judiciary and their staff to whom this action is assigned; and iv) Plaintiffs' counsel.

Through the application of these objective criteria, it is administratively feasible to identify class members. Ascertainability is established here.

### IV.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Amended Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel [Docket

16

No. 114] be **SUSTAINED** with the class definition modified as detailed above.  **IT IS FURTHER ORDERED that** Plaintiffs Susan Hicks and Don Williams be appointed as representatives of the class and Mehr, Fairbanks & Peterson Trial Lawyers, PLLC; Richardson & Smith, PSC; and Richardson, Barber & Williamson, PSC be appointed as counsel for the class.

February 21, 2014.

Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge