UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at ASHLAND**

| | |
|---|---|
| SUSAN HICKS and DON WILLIAMS, Individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) )   Civil Action No. )   0:14-cv-053-HRW-MAS |
| v. | ) ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) |
| Defendant, | |

**REPORT & RECOMMENDATION**

This matter is before the Court on Plaintiffs Susan Hicks and Don Williams', individually and on behalf of those similarly situated (collectively, "Plaintiffs"), unopposed Motion for Class Certification and Preliminary Approval of Class Action Settlement. [DE 224]. Defendant State Farm Fire & Casualty Company ("State Farm") supports the motion. [DE 225]. For the reasons stated herein, the Court recommends the District Court preliminarily approve the settlement.

### I. BACKGROUND

**A.   FACTUAL ALLEGATIONS**

Plaintiffs filed this action on behalf of all State Farm property insurance policy holders contending that State Farm wrongfully depreciated labor costs when processing property claims in contravention of Kentucky law. [DE 30]. Specifically, as exemplified by the case of the named Plaintiffs, an insured would make a claim to State Farm under the individual's property insurance policy, a standard-form policy employed by numerous individuals. State Farm would compensate the insured for the costs of repair to the home. [*Id*.]. However, State Farm would depreciate the cost of labor required to make the repair costs under an actual cash value ("ACV") calculation

resulting in an underpayment of the claim. [*Id*.]. Plaintiffs argued that "Kentucky law allows an insurer to depreciate the value of building materials, but does not all the depreciation of the cost of labor." [DE 30, ¶ 11].

**B.    PROCEDURAL HISTORY**

Before reaching settlement, the parties engaged in a lengthy litigation that saw two visits to the Sixth Circuit. The first legal hurdle for Plaintiffs was to establish that State Farm's form insurance policy did not permit for depreciation of labor costs from the ACV payments. Ultimately, the Sixth Circuit affirmed the District Court's decision that Plaintiffs' arguments on this point were correct. *See Hicks v. State Farm Fire & Cas. Co.*, 751 Fed. App'x 703 (6th Cir. 2018). The next legal fight centered upon whether the class should be certified. Both this Court and the Sixth Circuit held certification of the class was necessary. *See Hicks v. State Farm Fire & Cas. Co.*, 965 F3d 452 (6th Cir. 2020).

**C.    SUMMARY OF PROPOSED SETTLEMENT**

With both of those legal battles resolved, the parties focused on and ultimately reached a resolution of the claims. The parties were able to resolve compensation and relief for the class members. [DE 218]. A couple weeks later, the parties reconvened and were able to reach a resolution addressing service awards, attorneys' fees, and litigation costs. [DE 220]. The terms of the resolution are detailed below.

   *1.    Class Definition*

The class definition in the settlement agreement mirrors the class definition affirmed by the Sixth Circuit:

> [A]ll persons and entities insured under a State Farm homeowners policy that received "actual cash value" payments, directly or indirectly, from State Farm Fire and Casualty Company for loss or damage to a dwelling or other structure located in the Commonwealth of Kentucky, such payments arising from events that

>occurred from February 28, 2013 through July 25, 2015, where the cost of labor was depreciated.

[DE 224-3, ¶ 2.8, Page ID# 8626]. The class definition is limited both geographically and temporally. Moreover, the definition specifically and precisely excludes certain categories of individuals who are not included in the class, such as Plaintiffs' counsel and State Farm's directors and officers. [*Id.*].

### 2.     *Financial Recovery*

Compensation to class members depends upon how State Farm treated their labor costs relevant to their property insurance claims. The parties have agreed to three categories or factual distinctions subject to policy limits and deductibles of each class members' individual policies.

>**Group A**: Settlement Claimants Who Previously Received Only An ACV Payment. The Claim Settlement Payments to Claimants from whom estimated Non-Material Depreciation was initially deducted and who did not receive any subsequent replacement cost benefit payments will be equal to 100% of the estimated Non-Material Depreciation that was initially deducted from the ACV payment, plus simple interest at 5% on that amount calculated from the date of the ACV payment to the Effective Date.
>
>**Group B**: Settlement Claimants Who Previously Received Partial RCBs. The Claim Settlement Payments to Claimants from whom estimated Non-Material Depreciation was initially deducted and who partially recovered the initially deducted Non-Material Depreciation through payment of replacement cost benefits will be equal to 100% of the estimated Non-Material Depreciation that was not fully recovered, plus simple interest at 5% on that amount calculated from the date of the initial ACV payment to the Effective Date.
>
>**Group C**: Settlement Claimants Who Previously Received Full RCBs. The Claim Settlement Payments to Claimants from whom Non-Material Depreciation was initially deducted and who subsequently recovered all depreciation will be equal to simple interest at 5% on the amount of estimated Non-Material Depreciation initially applied but subsequently recovered, calculated from the date of the initial ACV payment through the final replacement cost payment.

[DE 224-3, ¶ 6.4, Page ID# 8639]. Service awards, attorneys' fees, and litigation costs, discussed below, will not reduce payments to class members. [DE 224-3, ¶ 6.5, Page ID# 8639-40].

### 3. *Release of Claims*

In exchange for the payment described above, Plaintiffs will release any and all claims against State Farm concerning the depreciation on structural damages insurance claim payments during the relevant time period. [DE 224-3, ¶ 2.29, Page ID# 8630]. All other disputes between the parties will proceed outside the course of this litigation.

### 4. *Service Awards, Attorneys' Fees, and Litigation Costs*

State Farm has agreed to pay service awards to the named Plaintiffs in the amount of $15,000 each upon following completion of the settlement. [DE 224-3, ¶ 13.5, Page ID# 8654]. Moreover, Plaintiffs' counsel will seek an award of $1,900,000 likewise upon completion of the settlement. [DE 224-3, ¶ 13.1, Page ID# 8653]. Again, neither of these payments will reduce the amount compensated to the class members.

### 5. *Class Notice and Administration*

The settlement agreement clearly defines and details the method of notice to class members. Specifically, Defendant has agreed to separately pay for the Class Notices and claims and notice Administrator. All Class Members will be given direct-mailed notice of the terms of the proposed settlement at least seventy-five days prior to the Final Approval Hearing. [DE 224-3, ¶ 5.2-5.4, Page ID# 8635-36]. Prior to mailing of the notice by the Administrator through the United States Postal Service, the Administrator will run all class members' names and addresses through the "National Change of Address" ("NCOALink") database. [DE 224-3, ¶ 5.3, Page ID# 8635]. Notice will also be published on the Internet. [DE 224-3, ¶ 5.7, Page ID# 8637-38]. A reminder postcard notice will also be issued prior to the expiration of the claim deadline. [DE 224-3, ¶ 5.6, Page ID# 8636].

## II. STANDARD OF REVIEW

Class action suits may be settled only with the court's approval. Fed. R. Civ. P. 23(e). Approval of a class action settlement involves two-stages: (1) "[t]he judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and (2) "[i]f so, the final decision on approval is made after the hearing." ANN. MANUAL COMPLEX LIT. (Fourth) § 13.14 (2019); *see also Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (referencing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001)). This two-step process applies regardless whether the class has been certified or not by the Court.[1] "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015) (quoting ANN. MANUAL COMPLEX LIT. § 21.662 (4th ed.)). Courts apply a degree of scrutiny to proposed settlement agreements sufficient to avoid "rubber-stamp[ing]" a proposed settlement agreement, while still being "mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the [proposed settlement agreement] are premised." *In re Inter-Op Hip Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001).

To approve a proposed settlement, the court must determine whether it is "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016); FED. R. CIV. P. 23(e)(2). The 2018 amendments to Rule 23(e) set forth a list of specific factors and issues for courts to consider in deciding whether a settlement is "fair, reasonable, and adequate" such that

---

[1] Because the Court previously certified the relevant class and that certification was affirmed by the Sixth Circuit, the Court will not rehash the mechanics of Rule 23(a) and (b) as those requirements have clearly been met. *See Hicks v. State Farm Fire & Cas. Co.*, 965 F3d 452 (6th Cir. 2020).

courts may approve the sending of notice and the proposed settlement. Under this new rubric, the Court must examine four issues: (1) whether the proposed class was adequately represented; (2) whether the proposed settlement was reached through an arm's length negotiation; (3) the proposed relief to the class is adequate; and (4) whether the proposed settlement treats class members equitably.

The Advisory Committee, in amending Rule 23(e) in 2018, did not intend to displace factors developed by the circuit courts in deciding whether to approve a proposed settlement agreement, but rather to "focus the court ... on the core concerns ... that should guide" the court's determination. FED. R. CIV. P. 23(e) advisory committee's note to 2018 amendment.

The Court thus considers both the Rule 23(e) factors and the factors set forth by the Sixth Circuit, as set forth below. *Peck v. Air Evac EMS, Inc.*, No. 5:18-cv-615-DCR, 2019 WL 3219150, at *5 (E.D. Ky. July 17, 2019).

### III. ANALYSIS

**A.     RULE 23(E)(2) FACTORS**

  *1.     Adequate Representation and Arm's Length Negotiation*

Regarding these first two factors, the Advisory Committee offered the following guidance:

> These paragraphs identify matters that might be described as "procedural" concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement. . . .
>
> The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.

FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). The Court, based upon the record, finds no dispute related to the representation and negotiations in this matter.

Namely, counsel for Plaintiffs is an experienced class action litigator. The decision to settle the current dispute was made after exhaustive discovery, two appeals to the Sixth Circuit, and other information about the dispute. Counsel correctly doggedly pursued both the relevant legal issue as well as class certification to ensure the optimal posture for settlement.

There is no concern about collusion. The parties engaged in multiple days of intense settlement negotiations with the assistance of the undersigned. After reviewing the relevant evidence, the opinions from the Court and Sixth Circuit, and zealous negotiation, the parties reached a settlement that was based upon an arm's-length negotiation.

### 2. *Adequate Relief*

Rule 23(e)(2)(C) requires the Court to review "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

First, the proposed settlement provides full and complete payment of the shortfall relevant to each class members' property insurance claim. Moreover, by categorizing payment into three types of groups, the proposed settlement also ensure that no class member is payed more than he or she is owed. While it is possible that the Class Members could recover more if this settlement is not approved, it is possible they could recover less or nothing at all. "[I]t is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D. N.Y. 2011). Although the Sixth Circuit

has already resolved many of the legal hurdles in the case, every trial would be "lengthy and costly" and comes with risks. *Id*.

Second, as detailed above, the parties have provided fair and effective methods of distributing relief to the class members, including taking steps to verify addresses of class members and posting the information online as well. The Court finds that these are reasonable actions that will ensure class members are notified, can opt-out if they so choose, and receive their funds.

Third, Plaintiffs' attorneys seek an award no greater than $1,900,000 or less than 30% of the total settlement fund. "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). "The 'majority of common fund fee awards fall between 20% and 30% of the fund.'" *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012) (quoting Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1294 (11th Cir.1999)). In this instance, the attorneys' fees are squarely in the typical range. Thus, the Court finds the fee to be reasonable, particularly given the fact the fee will not reduce the amount the class members receive.

Finally, the Court must review any side agreements between the parties, outside of the Settlement. Paragraph 17.3 of the proposed settlement agreement asserts that the settlement constitutes "the entire and exclusive agreement of the [p]arties." [DE 224-3, Page ID# 8659]. Therefore, the parties do not have any side agreements for review by the Court.

### 3. *Equitable Treatment*

The Court must determine whether the "proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Court finds that the proposed Settlement treats all class members equitably. Although there is disparity between the amounts some class members

8

will receive, these amounts are based on the property insurance claims and how those claims were treated by State Farm. Thus, the class members are treated equitably relative to each other.

### B. SIXTH CIRCUIT FACTORS

Prior to the 2018 Amendments to Rule 23, the Sixth Circuit relied on its own set of factors to determine whether a proposed class action settlement should be approved:

> To determine whether a settlement agreement satisfies Rule 23's fairness standard, we consider: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). These Sixth Circuit factors are somewhat duplicative of the new considerations set forth in Rule 23(e). Nevertheless, the Advisory Committee specifically stated the goal of the 2018 amendment was "not to displace any factor [developed by the federal circuit courts]." Advisory Committee Notes, 324 F.R.D. at 918. Some courts have applied the Sixth Circuit factors, *see Peck v. Air Evac EMS, Inc.*, No. 5:18-cv-615-DCR, 2019 WL 3219150 (E.D. Ky. July 17, 2019), while others have not, *see Busby v. Bonner*, No. 2:20-cv-2359, 2021 WL 4127775 (W.D. Tenn. Jan. 28, 2021). Out of an abundance of caution, the Court will briefly review each of the Sixth Circuit factors as well.

#### 1. *Risk of Fraud or Collusion*

As stated, there is no evidence in this matter that the parties colluded with one another, or that the settlement is the result of a fraud. Although Plaintiffs' lawyer stands to collect a substantial fee, it is not unusual for the class counsel to obtain such a fee, especially given the length and age of this litigation. *See Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012) (noting that attorney's fees are usually between 20% and 30% of the class fund).

9

### 2. *The Complexity, Expense, and Likely Duration of the Litigation*

The parties estimate this litigation would be lengthy and expensive for all parties involved. The parties stated:

> The instant lawsuit thus could have continued for several additional years in trial and appellate courts absent settlement. Experts in the areas of claims handling and data manipulation would have been retained. Both sides retained sophisticated counsel with nationwide class action practices. Given the foregoing, the complexity, expense and likely duration of the litigation supports preliminary approval of the proposed settlement here.

[DE 224-1, Page ID# 8606]. The Court finds that the parties' concerns about the length and cost of litigation are warranted. The fact that the Sixth Circuit has already twice weighed into the dispute affirms both the complexity and likely duration of this litigation. The Court has little doubt that continued litigation would require a vast expenditure of resources, both monetary and non-monetary, to reach resolution. Thus, early resolution is beneficial to all.

### 3. *The Amount of Discovery Engaged in by the Parties*

In addition to extensive legal briefing of the issues in the case, the parties had engaged in detailed and vast discovery. Specifically, by the time of settlement, "plaintiffs had obtained extensive and detailed state-wide claims data discovery from Defendant and Defendant's third-party vendor." [DE 224-1, Page ID# 8606]. Additionally, the parties had engaged several expert witnesses and already conducted several depositions. The Court concludes that parties have engaged in sufficient discovery to permit both sides to appreciate fully the risks and assess the value of settlement.

### 4. *The Likelihood of Success on the Merits*

The Court "cannot evaluate a settlement's fairness without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.' . . . In fact, this is the most important of the seven factors that we are supposed to

consider in reviewing the fairness of a settlement." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 723 (6th Cir. 2013) (internal quotation marks and citations omitted) (dissent).

Here, this Court and the Sixth Circuit have ruled in Plaintiffs' favor both as to the legal merits of their claims as well as class certification. Consequently, the only issue left to litigate is damages. Thus, Plaintiffs were likely to succeed at trial. This factor weighs in favor of the settlement.

### 5. *The Opinions of Class Counsel and Class Representatives*

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010). Plaintiffs' counsel, has represented that they are putative or certified class counsel in "dozens of pending labor depreciation class actions nationwide and has vast experience in insurance, class actions and complex litigation," and that using this experience, they "strongly recommend the settlement." [DE 224-1, Page ID# 8606]. The Court concurs.

### 6. *The Reaction of Absent Class Members*

Because the parties have reached a proposed settlement prior to trial, and the Court is reviewing this issue at the preliminary, pre-notice stage, the reaction of absent class members is impossible to know at this time. If the settlement is approved, the Administrator will make several efforts, described herein, to notify class members and alert them to the opt-out provisions. Class Members will have the opportunity to come and object. Any objections to the settlement can be addressed at the final approval hearing.

### 7. *Public Interest*

There is a substantial public interest in assuring insured received contracted compensation. "Likewise, there is a strong public interest in encouraging settlement of complex litigation and

class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted). "In the instant case, the proposed settlement[s] end[s] potentially long and protracted litigation among these parties and frees the Court's valuable judicial resources." *In re Southeastern Milk Antitrust Litig.*, No. 08-1000, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012). Thus, public interest supports this settlement.

C.   **NOTICE PLAN**

The proposed settlement agreement as well as the Notice of Class Action Settlement detail the notice process the parties intend to utilize. [DE 224-3, 224-5]. As discussed *supra*, all class members will be given direct-mailed notice of the terms of the proposed settlement at least seventy-five days prior to the Final Approval Hearing. [DE 224-3, ¶ 5.2-5.4, Page ID# 8635-36]. Prior to mailing of the notice by the Administrator through the United States Postal Service, the Administrator will run all class members' names and addresses through the "National Change of Address" ("NCOALink") database. [DE 224-3, ¶ 5.3, Page ID# 8635]. Notice will also be published on the internet. [DE 224-3, ¶ 5.7, Page ID# 8637-38]. A reminder postcard notice will also be issued prior to the expiration of the claim deadline. [DE 224-3, ¶ 5.6, Page ID# 8636].

> Rule 23(c)(2)(b) requires that
>
> [f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;

    (iv) that a class member may enter an appearance through an attorney if the member so desires;

    (v) that the court will exclude from the class any member who requests exclusion;

    (vi) the time and manner for requesting exclusion; and

    (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B). The Court has reviewed the parties' proposed Notice and determined it satisfies the requirements of Rule 23(c)(2)(B) and it is in plain, easily understandable language. The Court further finds that First Class United States Postal Mail is the most practical method of providing notice under the circumstances. The Court finds the requires of Rule 23(c) are met by the proposed Notice plan. *See Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (upholding a settlement even where 20% of the class members did not receive notice until after the objection period had run because the extensive notice scheme the case "was 'reasonably calculated to reach interested parties'") (citing *Karkouli's Inc. v. Donhany*, 409 F.3d 279, 282 (6th Cir. 2005)).

## IV. CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** the District Court find as follows:

1)     That all requirements and factors set forth in Rule 23(e) are present and preliminary approval is appropriate.

2)     That the Court will likely be able to approve the Settlement Agreement on behalf of all class members all persons and entities insured under a State Farm homeowners policy that received "actual cash value" payments, directly or indirectly, from State Farm Fire and Casualty Company for loss or damage to a dwelling or other structure located in the Commonwealth of Kentucky, such

        payments arising from events that occurred from February 28, 2013 through July 25, 2015, where the cost of labor was depreciated.

3)     The District Court approve the proposed Notice and Class Action Settlement Claim Form set forth in DE 224-5 and 224-6;

4)     That Plaintiffs Susan Hicks and Don Williams are preliminarily appointed as representatives of the class;

5)     That counsel for the Plaintiffs be appointed as class counsel in full compliance with Rule 23;

6)     That JND Legal Administrative be appointed to serve as third-party administrator for the settlement and to perform such duties as may be ordered by this Court and pursuant to the terms of the settlement agreement and stipulation;

7)     The District Court approve a website and First Class United States Postal Mail as means of distributing notice to the Class Members, to be disseminated within 45 days of the entry of the Order of preliminary approval; and

8)     A Final Approval Hearing shall be held before the District Court at the discretion of the District Court with the District Court to establish any and all necessary interim deadlines as described in FED. R. CIV. P. 23.

Pursuant to FED. R. CIV. P. 42 and 28 U.S.C. § 363(b) and (c), the parties shall file objections to this Report and Recommendation within fourteen days from the date of entry of the same.

Entered this 8th day of November, 2021.

